687 A.2d 1145

**Louise HAGANS, Appellant,**

v.

**CONSTITUTION STATE SERVICE COMPANY and Pennsylvania Financial Responsibility Assigned Claims Plan and State Farm Mutual Automobile Insurance Company.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1996.

Filed Jan. 21, 1997.

232

Arnold Machles, Bala Cynwyd, for appellant.

Michael Senoyuit, III, Montgomeryville, for appellees.

Before CIRILLO, President Judge Emeritus, and SAYLOR and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

Louise Hagans appeals from an order entered by the Court of Common Pleas of Philadelphia County granting summary judgment in favor of appellees, Constitution State Service Company and Pennsylvania Financial Responsibility Assigned Claims Plan. We reverse and remand.

On or about December 21, 1991, appellant, Louise Hagans (Hagans), sustained injuries when an uninsured vehicle in which she was a passenger collided with an insured automobile driven by William Saunders (Saunders). Eric Fooks (Eric) was the driver of the uninsured automobile. Shoona Fooks (Shoona), wife of Eric, owned the uninsured vehicle; Shoona was not an occupant of the car at the time of the accident. Because Hagans did not own her own vehicle or live with someone who owned a vehicle at the time of her for her injuries. On July 12, 1993, Hagans filed a personal injury action against Eric Fooks and Saunders.

On December 4, 1995, Hagans instituted a civil action against Constitution State Service Company (Constitution) and Pennsylvania Financial Responsibility Assigned Claims Plan (PACP)[1] to recover uninsured and no-fault medical benefits.[2] Constitution is the assigned insurer under the PACP; it handles, processes, and investigates uninsured motorist claims made to PACP.

PACP and Constitution moved for summary judgment claiming that no material facts in the instant case were in dispute and that, as a matter of law, judgment should be entered in their favor. The trial court agreed and granted the motion. Hagans now appeals.[3] She presents the following issues for our review:

1. According to 75 Pa.C.S.A. § 1757(a), an action by an eligible claimant to recover benefits from an assigned claims plan must be commenced **within four years** from the date of the accident. In the present case, Hagan's accident occurred on or about December 21, 1991; Hagans filed her action against appellees on December 4, 1995—within the four-year limitations period.

2. Hagans also sued Saunders' insurer, State Farm Mutual Automobile Insurance Company, for first party medical benefits pursuant to 75 Pa.C.S.A. § 1713. Section 1713 states:

 (a) **General Rule.**—Except as provided in section 1714 (relating to ineligible claimants), a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first party benefits against applicable insurance coverage in the following order of priority:
 (1) For a named insured, the policy on which he is the named insured.
 (2) For an insured, the policy covering the insured.
 (3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.
 (4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident.

 State Farm properly denied any responsibility to pay first party benefits to Hagans under section 1713. Accordingly, the trial court granted State Farm's preliminary objections and dismissed State Farm from the suit.

3. This court recognizes that the Pennsylvania Rule of Civil Procedure involving motions for summary judgment was recently rescinded on February 14, 1996, and revised. These revisions to the old Pa.R.C.P. 1035 are now embodied in Pa.R.C.P. 1035.1 and model the procedure of summary judgment motions under the federal rules. Because the revised rule did not become effective until July 1, 1996, and the present

(1) Is a plaintiff required to institute a saving action against an individual when there exists no evidence that establishes any responsibility on the part of that individual?

(2) When a defendant moves for summary judgment, based on the failure to institute a saving action, has plaintiff met the burden of production by claiming that, after a reasonable investigation, no evidence exists indicating that the third person is a responsible party, therefore shifting the burden of production to defendant to produce evidence which would tend to establish a basis to hold the third person liable?

After the pleadings are closed, but within such time as to not delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits. Pa.R.C.P. 1035(a). The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b).

When we review the grant of a motion for summary judgment, the appellate court's scope of review is well-settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b); *see also Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989) (summary judgment may be granted only where the right is clear and free from doubt). The record, and any inferences therefrom, must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil*, 438 Pa. 194, 264 A.2d 597 (1970). The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion.

order was entered in May of 1996, the new rule did not apply to the trial court's determination of the matter underlying this appeal.

*Hetrick v. Apollo Gas Co.*, 415 Pa.Super. 189, 608 A.2d 1074 (1992).

Hagans asserts that she was not required to name Shoona Fooks as a party-defendant in her personal injury action in order to recover assigned claims plan benefits from Appellees, and, therefore, preclude summary judgment in Appellees' favor. Specifically she claims that Appellees' subrogation rights were not harmed because there is no evidence establishing that Shoona Fooks is at all responsible for Hagans' accident and/or resulting injuries.

 Under the Motor Vehicle Financial Responsibility Law (MVFRL), an assigned claims plan (ACP) is an administrative organization that provides benefits for individuals, injured in motor vehicle-related accidents, who, through no fault of their own, have no other available source of insurance coverage. *Mangum v. ACP*, 449 Pa.Super. 1, 672 A.2d 1324 (1996) (citing *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84 (1995)); *see also* 75 Pa.C.S.A. § 1751 *et seq.* Any insurer that provides financial responsibility, required by law, must organize and maintain an assigned claims plan which is subject to approval and regulation of the Insurance Department. **Summ. Pa. Jur. 2d,** *Insurance* § 16:134. After a claim has been made, an assigned claims plan distributes financial responsibility to insurers and each insurers' policyholders for the assessment of the costs for eligible claimants. *Hodges v. Rodriguez*, 435 Pa.Super. 360, 645 A.2d 1340 (1994); **Summ. Pa. Jur. 2d,** *Insurance* § 16:134.

 An assigned claims plan is not an insurer under the MFVRL. *Williams v. Tuck*, 397 Pa.Super. 213, 579 A.2d 1332 (1990). An ACP does not collect premiums or provide liability insurance like a typical insurer under the laws of this Commonwealth. *See Westbrook v. Robbins*, 416 Pa.Super. 543, 611 A.2d 749 (1992) (refusing to impute the duty of paying attorney's fees on an ACP when it is not considered an insurer under MVFRL; the relationship between ACP and eligible claimant is one created statutorily and must be defined ac-

cordingly). Accordingly, the relationship between an eligible assigned claims plan claimant and an assigned claims plan is not one of insured-insurer. *Id.*[4]

██ Subchapter E of the MVFRL contains the provisions regarding assigned claims plans established in this Common-wealth. Chapter 75, section 1752 of the Pennsylvania Consolidated Statutes Annotated states:

(a) **General rule.**—*A person is eligible* to recover benefits from the Assigned Claims Plan *if the person meets the following requirements:*

(1) Is a resident of this Commonwealth.

(2) Is injured as the result of a motor vehicle accident occurring in this Commonwealth.

(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).

(4) Is not the operator or occupant of a motor vehicle owned by the Federal Government or any of its agencies, departments or authorities.

(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.

4. The organization of assigned claims plans under the more recent MVFRL (effective Oct. 1, 1984) is dramatically different from the structure of ACPs under the No–Fault Act (enacted 1974). Under the latter piece of legislation, insurance companies providing basic loss benefits were required to organize an ACP and were also responsible to assign a claim to a participating insurer and notify the claimant to that effect. Thereafter, the insurer assumed all the obligations to the claimant **as if it had issued a policy of insurance.** *Westbrook v. Robbins,* 416 Pa.Super. 543, 611 A.2d 749 (1992) (citing *Tubner v. State Farm Ins. Co.,* 496 Pa. 215, 436 A.2d 621 (1981)).

By contrast, under the MVFRL, assigned claims plans are not assigned to individual insurance companies. Rather, the plan collects surcharges from all companies doing business in Pennsylvania and contracts with an individual company to handle a claim. *Westbrook, supra.* Under this arrangement, the carriers perform the function of claims adjusters for the plan and assume no other responsibilities as would a regular insurer.

(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.

(7) Is not the operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle or motorist pedalcycle or other like type of vehicle required to be registered under this title and involved in the accident.

75 Pa.C.S.A. § 1752 (1996 & Supp.1996) (Act effective Oct. 1, 1984, Pub.L. 26, No. 11, § 3, *as amended* Feb. 12, 1984, Pub.L. 53, No. 12, § 3) (emphasis added).[5] This same statutory section enumerates circumstances which will render a claimant ineligible to recover benefits from an ACP. Subsection (b) of section 1752 states:

A person otherwise qualifying as an eligible claimant under subsection (a) shall nevertheless be ineligible to recover benefits from the Assigned Claims Plan if that person contributed to his own injury in any of the following ways:

(1) While intentionally injuring himself or another or attempting to intentionally injure himself or another.

(2) While committing a felony.

(3) While seeking to elude lawful apprehension or arrest by a law enforcement official.

(4) While knowingly converting a motor vehicle.

75 Pa.C.S.A. § 1752(b) (1996 & Supp.1996).

■ Appellees do not contest that Hagans has satisfied the seven eligibility requirements under 75 Pa.C.S.A. § 1752. Rather, Appellees would have the courts of this Commonwealth hold ACP claimants, like Hagans, to an additional duty in order to allow them to be eligible to receive ACP benefits

**5.** Under the MVFRL, an eligible claimant recovering from an ACP is entitled to:

recover medical benefits, as described in section 1712(1) (relating to availability of benefits), up to a maximum of $ 5,000.00. No income loss benefit or accidental death benefit shall be payable under this subchapter.

75 Pa.C.S.A. § 1753 (benefits available under ACP).

under the MVFRL, that is, requiring claimants to sue *any and all* potential tortfeasors involved in an accident prior to claiming benefits under an ACP. Appellees argue that allowing otherwise destroys their "right of subrogation" which has been statutorily created by the following MVFRL provision:

> The Assigned Claims Plan or its assignee is entitled to recover, *in accordance with the tort liability law of this Commonwealth,* reimbursement for benefits, coverages, costs and any other sums it has paid out to an eligible claimant under an assigned claims plan.

75 Pa.C.S.A. § 1756 (emphasis added). This right to be reimbursed is known as a right of "subrogation;" generally, an insurer who is an assignee under an assigned claims plan is reimbursed or "subrogated" by the actual tortfeasor involved in the claimant's accident.

 An insurer's right of subrogation is an equitable principle deeply rooted in the realm of insurance contracts. Subrogation presupposes an actual payment and satisfaction of a debt or claim by the entity asking to be subrogated ("subrogee"). *Daley–Sand v. West American Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965 (1989). It is axiomatic that a subrogee cannot recover damages unless his subrogor has a legally cognizable cause of action against a third party. *Brinkley v. Pealer,* 341 Pa.Super. at 438–40, 491 A.2d at 898. Our court has stated that:

> It is well established that an action for subrogation is one based on considerations of equity and good conscience. The goal is to place the burden of the debt upon the person who should bear it. The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable principles [citation omitted]. It has often been said that the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated. (citations omitted).
>
> However, as the subrogee stands in the precise position of the subrogor the subrogee should be limited to recovering in subrogation the amount received by the subrogor ..., for

equity will not allow the subrogee's claim to be placed ahead of the subrogor's.

*Daley-Sand,* 387 Pa.Super. at 638–39, 564 A.2d at 970 (citing *Allstate Insurance Co. v. Clarke,* 364 Pa.Super. 196, 201, 527 A.2d 1021, 1023 (1987)).

Due to the equitable principles governing subrogation in the insurance arena, extinguishing a subrogee's statutory right to be reimbursed is generally disfavored. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84 (1995). Our court has addressed the ramifications of extinguishing the subrogation rights of assigned claim plans in various factual contexts. In *Melendez v. Pennsylvania Assigned Claims Plan,* 384 Pa.Super. 48, 557 A.2d 767 (1989), plaintiff was injured when the car she was driving collided with another vehicle operated by the alleged tortfeasor, Margaret Hemingway. Plaintiff did not own the vehicle in which she was the driver; the car was owned by Esmeralso Cruz. Plaintiff instituted suit solely against Hemingway and subsequently obtained an arbitration judgment in her favor. Plaintiff then executed a release absolving Hemingway from any future liability from the accident. Plaintiff obtained the judgment and executed the release without obtaining the consent of the Assigned Claims Plan assignee.

In making its determination that summary judgment should be granted in favor of the ACP, the *Melendez* court recognized a specific provision of the Uninsured Motorist Act, 40 Pa. C.S.A. § 2000(e)(2).[6] Section 2000(e)(2) states that a settle-

**6.** The Uninsured Motorist Act (UMA)(Act of August 14, 1963, P.L. 909, § 1, *as amended,* December 19, 1968, P.L. 1254, No. 397, § 1, 40 Pa.C.S. § 2000, *et seq.*), "codified the requirement of uninsured motorist coverage in liability insurance policies under the previously existing fault system." *Tubner,* 496 Pa. at 220 n. 11, 436 A.2d at 623 n. 11. Specifically, under the UMA, a motor vehicle liability policy issued in this Commonwealth and covering any vehicle registered or principally garaged in Pennsylvania must include coverage for the protection of persons insured under the policy who become legally entitled to recover damages from the owners or operators of uninsured vehicles. **Summ. Pa. Jur. 2d,** *Insurance* § 16:37. The coverage under the UMA, however, is distinct from the uninsured motorist coverage required in policies under the later enacted No–Fault Act, 40 Pa.C.S.A. § 1009.101, *et seq.*

ment between a claimant and a tortfeasor, without the consent of an assigned claims plan, precludes the claimant from receiving any uninsured motorist benefits. 40 Pa.C.S.A. § 2000(e)(2). The *Melendez* court noted that section 2000(e)(2) was intended to "protect the subrogation rights of the [Plan]." *Id.* Analogizing section 1756 of the MVFRL to section 2000(e)(2), the *Melendez* court concluded that plaintiff's settlement with Hemingway had the effect of extinguishing the assignee's right of subrogation against this tortfeasor. The *Melendez* court emphasized the importance of protecting an insurer's right of subrogation, stating:

> **Protecting the insurer's subrogation rights is necessary to further the Commonwealth's public policy against double recovery.** [citation omitted]. This policy would seem especially important where an Assigned Claims Plan insurer is involved. The Assigned Claims Plan was established to protect certain claimants who would otherwise be unprotected. Frustrating the subrogation rights of an ACP designated insurer would no doubt weaken the plan. Therefore, it would be imprudent policy to permit double recovery by an ACP claimant who has released a tortfeasor at the expense of the subrogation rights of the Plan.

*Melendez,* 384 Pa.Super. at 53, 557 A.2d at 769 (emphasis added).

The plaintiff in *Melendez* made a similar argument to that advanced by Hagans in the present appeal. Specifically, the plaintiff maintained that even if she had destroyed the ACP's subrogation rights against one tortfeasor (Hemingway), she did not destroy its rights as to a second tortfeasor (Cruz). In response to this argument, the *Melendez* court inconclusively stated that:

> Under the facts of the instant case it is questionable whether Melendez has a tort claim against Cruz [the uninsured owner of the vehicle in which Melendez was operating at the time of the accident]. **Since Melendez has not demon-**

(Act of July 19, 1974, P.L. 489, No. 176, §§ 104, *et seq.*). Assigned claims plans did not exist under the UMA.

**strated that she has such a claim against Cruz, we decline to decide the issue.**

*Id.* at 54, 557 A.2d at 769 (emphasis added).

In *Dyer v. Travelers*, 392 Pa.Super. 202, 572 A.2d 762 (1990), our court was faced with determining the effect of a final arbitrator's award, entered against tortfeasors and in favor of an accident victim, on the subrogation rights of an assigned claims plan under 75 Pa.C.S.A. § 1756. In *Dyer*, the plaintiff-victim, who sustained injuries in an automobile accident, filed suit against the driver of the vehicle in which the plaintiff was riding, as well as the driver and owner of the other vehicle involved in the accident. The plaintiff obtained an arbitration award in her favor and against both drivers; the arbitration panel found in favor of the owner of the other vehicle. Subsequently, the plaintiff filed a complaint against Appellee, The Travelers, seeking recovery under an assigned claims plan. After both parties filed for summary judgment, the court found in favor of the ACP holding that:

> [T]he arbitration award prejudiced The Travelers' right of subrogation, and that appellant [plaintiff] was therefore precluded from recovering from The Travelers under *Melendez v. Pennsylvania Assigned Claims Plan*, 384 Pa.Super. 48, 557 A.2d 767 (1989).

*Id.* at 205, 572 A.2d at 763.

The *Dyer* court reasoned that the finality of an arbitrator's award had the same preclusive effect on the rights of subrogation as in a case where a plaintiff has executed a release in favor of a tortfeasor. Specifically, the court stated "[u]nder the MVFRL the statutory right of subrogation includes the right to decide how to proceed against a tortfeasor in order to best preserve the funds in the Assigned Claims Plan." *Dyer*, at 206, 572 A.2d at 764. Finally, the court found that because Travelers had no control over any aspect of the arbitration proceedings, the plaintiff had singlehandedly prejudiced the claims plan's subrogation rights.

Most recently, in *Torres v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 435 Pa.Super. 325, 645

A.2d 1322 (1994), our court was again faced with the issue of when a claimant has effectively extinguished the subrogation rights of an assigned claims plan. In *Torres*, an injured pedestrian claimed benefits under an assigned claims plan after he was struck by a vehicle owned by Harold Eugene Boyd and operated by Jose Vasquez. The *Torres* court held that because the claimant had failed to file his personal injury action against Boyd and Vasquez before the statute of limitations period had expired, he had impaired the plan's right to subrogation. This extinguishment of appellee's subrogation right warranted the denial of claimant's request for benefits under the plan.

The *Torres* court stated:

[O]ur cases establish that we need not find literal "extinguishment" of the Plan's subrogation right in order to preclude recovery by a plaintiff. Instead, **the relevant inquiry is whether the plaintiff's action or inaction has so impaired or prejudiced the subrogation right as to effectively extinguish it.** *Melendez, supra, Dyer, supra.*

*Id.* at 329, 645 A.2d at 1324 (emphasis added).

Appellees argue that the *Torres* case is indistinguishable from the present case, and, therefore, controls its outcome. As such, Appellees would have this court find that Hagans' failure to sue the owner of the vehicle in which she was a passenger "has so impaired or prejudiced the subrogation right [of Appellees] as to effectively extinguish it." *Id.* We not only disagree with this conclusion, but also find error, generally, with Appellees' application of the *Torres, Melendez* and *Dyer* cases to the present appeal.

First, we note a significant distinction between *Torres* and the present case. In *Torres*, the claimant failed to sue *any and all* of the alleged or potential tortfeasors (both owners *and* drivers) within the applicable statute of limitations period. By contrast, Hagans brought suit against *both* drivers of the cars involved in her accident **before** expiration of the statutory two-year limitations period. The *Dyer* and *Melendez* cases are readily distinguishable from the present case as well.

Unlike Hagans, the ACP claimants in *Dyer* and *Melendez* took affirmative steps to ensure that they would inure double recovery through first settling with and releasing tortfeasors, and then, later, attempting to recover benefits under the assigned claims plans. Not one of these cases, however, has involved facts where an injured passenger makes a good faith effort to sue all persons actually involved in an accident, well within the applicable statute of limitations period, without releasing or settling with such persons. To preclude recovery under this latter factual scenario is not only against the basic policy of awarding ACP benefits to eligible claimants, but is also contrary to the equitable principles underlying the concept of subrogation.

In light of the different circumstances underlying *Dyer* and its progeny, we are urged to consider an issue of first impression—whether an otherwise eligible claimant under 75 Pa. C.S.A. § 1752, who has neither released or settled with any tortfeasors, nor failed to sue *any* possible tortfeasor within the applicable statute of limitations, is required to sue any and all persons, however removed from an automobile accident, in order to recover under 75 Pa.C.S.A. § 1754. To complete this task, we must weigh the often competing interests of continuing to protect ACPs and their subrogation rights against our Commonwealth's primary objective under the MVFRL of affording an injured claimant the greatest possible coverage. *Melendez, supra; Dyer, supra.* With these concerns in mind, we remain cognizant of the fact that because an ACP is not an insurer, cases interpreting when an insured has extinguished an insurer's subrogation rights are instructive at best; they are certainly not binding on the present case.

 A plaintiff instituting suit for personal injuries must commence such proceedings within the two-year statute of limitations period under 42 Pa.C.S.A. § 5524(2); *see also Insurance Co. of N. America v. Carnahan,* 446 Pa. 48, 284 A.2d 728 (1971). Similarly, an ACP has two years within which to assert its subrogation rights, against actual tortfeasors, for benefits paid to ACP claimants in personal injury actions. *Torres,* 435 Pa.Super. at 327–29, 645 A.2d at 1323

(citing *Carnahan, supra* ). Therefore, once a plaintiff's statutory right to sue has run out, an ACP's right to collect from tortfeasors has also expired. Presently, Hagans' failure to sue Shoona Fooks within two years after the date of the accident has barred her from personally recovering against said party, and, effectively, cut off any right Constitution or PACP **may have** in being subrogated for benefits paid to Hagans under 75 Pa.C.S.A. 1754. We find, however, that this right to subrogation is not absolute. It is premised upon the fact that Hagans has a legally cognizable cause of action against Shoona Fooks. *Brinkley, supra.*

Focusing on the subsection of the MVFRL regarding assigned claims plans, we take particular notice of the phrase of the statute that states that assigned claims plans are entitled to enforce their subrogation rights **"in accordance with the tort liability of this Commonwealth."** 75 Pa.C.S.A. § 1756. This highlighted language clearly operates to restrict the situations under which an ACP is entitled to recover benefits it has paid to an eligible assigned claims plan claimant. To interpret this restriction, in light of the present facts of this case, we will fully examine both the language and intent of the MVFRL, the policy of subrogation, and the existing case law regarding the tort liability of persons like Shoona who are sued under the MVFRL merely because they are owners of vehicles involved in an accident.

First, we look to the statute involved in the present appeal, the MVFRL. When we construe the MVFRL we must pay close attention to the language of the act, itself, and the statute's organization into subchapters. *Westbrook,* 416 Pa.Super. at 548–50, 611 A.2d at 752. The subrogation section includes no language proposing that an ACP claimant must sue any and all potential tortfeasors in order to be eligible to recover benefits under the plan. In *Westbrook,* our court noted that there are a number of parallel provisions in subchapters B (Motor Vehicle Liability Insurance First Party Benefits) and E (Assigned Claims Plan) of the MVFRL. Included within this list of congruous sections of the statute

are sections 1720 (subrogation under subchapter B) and 1754 (subrogation under subchapter E). Section 1720 states:

> In actions arising out of the maintenance or use of a motor vehicle, *there shall be no right of subrogation or reimbursement from a claimant's tort recovery* with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).

75 Pa.C.S.A. § 1720 (emphasis added) (*repealed in part by* section 25(b) of Act No. 1993–44).[7] The court in *Westbrook* stated that in cases where parallel provisions existed between subchapters B and E, "the legislature intended each to stand on its own. Otherwise there would have been no need to duplicate similar provisions in each subchapter." *Id* at 553, 611 A.2d at 754. Accordingly, we are not intended to interpret section 1754 under the MVFRL in light of this other subrogation provision which explicitly restricts an insurer's right of subrogation under certain, limited circumstances. Each subrogation provision stands on its own, and must be interpreted in isolation. Finding no statutory language, in either provision, which would allow us to read an additional

7. Although not applicable to the substantive issues on appeal, we note that in 1993, in response to certain amendments made to the Worker's Compensation Act (Act of June 2, 1915, P.L. 736), the legislature repealed the portion of section 1720 that relates to workers' compensation benefits or other benefits under the Workers' Compensation Act. *See* Section 25(b) of the Act of July 2, 1993, P.L. 190, No. 44 ("Act 44"); *Palmosina v. Laidlaw Transit Co. Inc.*, 445 Pa.Super. 121, 127–28 n. 3, 664 A.2d 1038, 1041 n. 3 (1995); *Fulmer v. Commonwealth of Pennsylvania State Police*, 167 Pa.Commw.Ct. 60, 64 n. 3, 647 A.2d 616, 618 n. 3 (1994); *Byard F. Brogan, Inc. v. W.C.A.B.*, 161 Pa.Commw.Ct. 453, 637 A.2d 689 (1994). In essence, actions arising after the effective date of the repeal (sixty days from July 2, 1993) would recognize the right of subrogation from a claimant's recovery with respect to worker's compensation benefits. Even identifying this change in the law, we realize that the section of Act 44, which repealed 75 Pa.C.S.A. § 1720, does not apply to this litigation because Hagans' 1991 accident occurred prior to the effective date of such changes. *Byard F. Brogan, Inc., supra.*

duty into the eligibility requirements for an ACP claimant, we next turn to an examination of the policy of subrogation.

Traditionally, courts have found that insureds have interfered with an insurer's subrogation rights when they have settled with a tortfeasor, executed a release in favor of a tortfeasor, or obtained a judgment in their favor against a tortfeasor before allowing an insurer to "stand in its shoes." Today we are not faced with either an "insurer" or a claimant that has settled, released or obtained a judgment with tortfeasors. The worst case scenario for Appellees would be if neither defendant in the underlying action, Eric Fooks or William Saunders, is found liable for Hagans' injuries. In that event, any assigned claims plan benefits paid by Appellees to Hagans would go unreimbursed due to the fact that there were no "benefits or coverages paid to Hagans." 75 Pa.C.S.A. 1754.

Instantly, we cannot find that the traditional, equitable principles underlying subrogation apply to the instant issue on appeal. "Keeping in mind that one who comes to equity must do equity, we cannot give due consideration to [Appellees'] defense of entitlement to its subrogation rights, an equitable principle." *Daley–Sand*, 387 Pa.Super. at 640, 564 A.2d at 970. It is well known that a subrogee's rights can rise no higher than that of its subrogor. *Brinkley v. Pealer*, 341 Pa.Super. 432, 491 A.2d 894 (1985). Therefore, Appellees' right to subrogation as an assigned claims plan is no greater than Hagans' right to recover from such a plan as an eligible claimant. Because Hagans failed to sue Shoona within the two-year limitation period, Hagans, herself, will forever be foreclosed from receiving any compensation from Shoona for her injuries sustained in the accident. Therefore, the policy reasons engendered by the *Melendez* court are not furthered by applying its law regarding preservation of subrogation rights to the facts of the case at hand. Appellees have not paid Hagans any benefits under the assigned claims plan. Hagans neither settled with nor executed a release in favor of a tortfeasor involved in her accident. *Cf. Melendez, supra; Dyer, supra.* There is no potential for Hagans to inure a

"double recovery," *cf. Melendez*, because she, like Appellees, is prevented from ever recovering damages from Shoona Fooks. Although the potential exists that Appellees may never recover ACP benefits, we still find it necessary to resolve whether Hagans has a viable common law action in tort against Shoona Fooks as owner of the accident vehicle before we will find that Hagans should be summarily precluded from recovering under the MVFRL.

 There are a number of possible instances that could lead a court to presume Shoona's negligence due to her ownership status of the accident vehicle. Our supreme court has recognized that when a person violates a statute, such violation may be considered negligence *per se*, making that person automatically liable in negligence. *Kaplan v. Philadelphia Transp. Co.*, 404 Pa. 147, 171 A.2d 166 (1961). Holding a person negligent *per se* is only proper, however, where the statutory violation was the proximate and efficient cause of an accident. *See Kaplan*, 404 Pa. at 148–50, 171 A.2d at 167 (where plaintiff, attempting to enter a cab, was injured after being struck by a trolley which did not see plaintiff emerge from behind defendant's illegally parked truck, the fact that defendants' truck was parked in violation of a section of the Motor Vehicle Code was not negligence *per se* because truck's illegal parking was not proximate cause of plaintiff's accident; plaintiff could have entered the cab from another area of the street with safety, rather than from behind the defendants' parked truck).

 We are further aware that owners of uninsured registered vehicles in this Commonwealth are not favored under the MVFRL. Pursuant to 75 Pa.C.S.A. § 1714, an owner of a registered vehicle that does not have financial responsibility cannot recover first party benefits. *Cf. Henrich v. Harleysville Ins. Co.*, 533 Pa. 181, 620 A.2d 1122 (1993) (the restriction against recovery of first party benefits for owners of uninsured registered vehicles, however, does not apply to the passenger of such uninsured vehicles). *See also Allen v. Merriweather*, 413 Pa.Super. 410, 605 A.2d 424 (1992) (when a

husband suffers injuries in a motor vehicle accident while operating his wife's uninsured vehicle, he was not entitled to receive first party benefits because he had a property interest in the car under marital property law, and, therefore was regarded as the car's owner as well). If an uninsured vehicle is involved in an accident, an owner's failure to maintain financial responsibility at the time of the accident will result in suspension of the owner's operating privilege, and, where applicable, suspension of the vehicle's registration. *See* 75 Pa.C.S.A. § 1785 (proof of financial responsibility following accident); *see also Commonwealth Dep't of Transp., Bureau of Traffic Safety v. Hill,* 117 Pa.Commw.Ct. 160, 117 Pa. Cmwlth. 160, 543 A.2d 211 (1988). Finally, any owner of an uninsured motor vehicle who operates or permits the operation of such vehicle upon a Commonwealth highway shall also be deemed to have committed a summary offense and shall, upon conviction, be sentenced to pay a $ 300.00 fine. *See* 75 Pa.C.S.A. § 1786(f).

We are hard pressed to find that Shoona was negligent *per se* in the car accident between the two vehicles. Although we may assume that Shoona, as owner of an uninsured vehicle, was potentially in violation of some, if not all, of these various Motor Vehicle Code sections, we cannot say that her violation of the MVFRL was the proximate cause of the accident involving Hagans. The fact that the Fooks' automobile was uninsured was merely a fact surrounding the circumstances of the accident, not the *cause* of the accident in any way. Rather, as plaintiff has alleged in her complaint, both vehicle operators (Saunders and Eric Fooks) were apparently negligently operating the automobiles involved in the accident. *See Vernon v. Stash,* 367 Pa.Super. 36, 532 A.2d 441 (1987) (where motorist's violation of a section of the Motor Vehicle Code for failure to park his vehicle with its wheels turned towards the curb, and where such automobile rolled down the hill into a home and caused injuries to plaintiff, motorist was not negligent *per se* for violation of statute because failure to abide by statute did not cause accident; evidence existed to show that

curb was not square and was insufficient to prevent a disengaged, brakeless automobile from rolling down the hill).

 Our legislature has also made it a summary offense for an automobile owner to authorize or permit his or her automobile from being operated by a person without a valid driver's license. *See* 75 Pa.C.S.A. § 1574. In such cases, however, in order for the owner to be held liable for injuries caused by the operator, it must be shown that the owner knew or had reason to know that the individual to whom he authorized to operate his vehicle did not have a valid driver's license. *Burkholder v. Genway Corp.,* 432 Pa.Super. 36, 637 A.2d 650 (1994). Presently, neither party has alleged any facts, nor do the pleadings reveal any facts indicating that Eric did not have a valid license at the time of the accident and that Shoona authorized or permitted him to operate the uninsured automobile knowing or having reason to know such a fact. *See* 75 Pa.C.S.A. § 1574; *Burkholder, supra.*

We next turn our focus on the "tort liability of this Commonwealth," embodied in our case law, for situations where an owner, who is not a passenger of a car involved in an accident, will be held liable for the injuries sustained as a result of someone else's negligent driving of such vehicle. Our courts have generally held that in order to impute a driver's negligence to the owner of the vehicle, one must show that the driver was under the control of the owner as fully as if the driver were a paid servant. *Breslin by Breslin v. Ridarelli,* 308 Pa.Super. 179, 454 A.2d 80 (1982). In *Breslin,* the court stated that:

> To establish liability against an absentee owner, it must be shown not only that the driver was the owner's servant but also that such servant was at the time engaged in the master's business so as to be subject to the master's control or right of control.... *Negligence will not be imputed to the husband of a motorist where the uncontradicted evidence is that the motorist was on a mission of her own and that her husband has not ordered or requested her to do anything for him.* [Citations omitted].

*Breslin,* 308 Pa.Super. at 184–85, 454 A.2d at 82–83 (emphasis added).

Our Commonwealth also recognizes that a mere spousal relationship is insufficient to impose liability upon a spouse, as owner of a vehicle, due to the other spouse's negligent driving of that vehicle. *Breslin,* at 184, 454 A.2d at 82 (citing *Richardson v. Patterson,* 368 Pa. 495, 84 A.2d 342 (1951); *Hildock v. Grosso,* 334 Pa. 222, 5 A.2d 565 (1939); *Warman v. Craig,* 321 Pa. 481, 184 A. 757 (1936); *Piquet v. Wazelle,* 288 Pa. 463, 467, 136 A. 787, 788 (1927)). By contrast, our court has held that a husband driving a car titled in his wife's name was an "owner" of the automobile for purposes of the MVFRL. *Allen,* 413 Pa.Super. 410, 605 A.2d 424 (1992).

In *Allen,* our court was faced with determining whether a husband-driver of an uninsured motor vehicle, registered and uninsured vehicle under the MVFRL. In order to resolve whether there was a "sufficient indicia of control or ownership which would support imputing the obligation to provide financial responsibility" onto the driver-husband, the court looked to certain determinative factors, namely: the husband's property interest in the vehicle under Pennsylvania marital property law; the automobile's purchase after the couple was married; the husband's residing with the owner-wife on the date of the accident; the wife's permitting the husband to drive the vehicle which he knew was uninsured at the time he was driving it; and, the husband's enjoyment of the use and benefits of the car. Under these facts, the court imputed the wife's ownership status onto the husband. *Allen, supra.*

Presently, neither parties have alleged nor presented facts showing that Eric had a property interest in the car, that the car was purchased after the Fooks were married, that Eric knew the car was uninsured and that Shoona let him drive it knowing such a fact, or that Eric inured a benefit from the car. Arguably, under the dictates of *Allen,* if facts established that Shoona's ownership status should be imputed to her husband, Hagans' failure to sue the paper "owner" of the uninsured vehicle would not extinguish Appellees' subrogation

rights. Eric, as imputed "owner" of the accident vehicle, was properly made a party of Hagans' suit, and if he were held liable, Appellees could recover these benefits as subrogees.

Finally, no facts have been alleged to show that Eric was under the control of his wife as fully as if he were a paid servant. *Breslin, supra.* In that vein, unless certain specialized facts were proven to show that a master-servant relationship existed between Eric and Shoona, we would not allow the Fooks' mere spousal relationship to impose liability upon Shoona as owner of a vehicle due to Eric's alleged negligent driving. *Breslin, supra.*

Without any guidance other than the clear language of the MVFRL, specifically sections 1752–56, we find that there is no requirement that an eligible ACP claimant must sue any and all potential tortfeasors, under the facts of the present case, in order to recover benefits under subchapter E of the MVFRL. Although we are cognizant of the need to preserve ACP funds by ensuring that the proper parties are sued so that ACPs may recover any funds paid to claimants, presently we cannot hold that such equitable principles should constrain a good-faith claimant, like Hagans, from recovering from Appellees through a motion for summary judgment.[8] The statutory language does not impose this additional duty on Hagans. 75 Pa.C.S.A. § 1752; *Westbrook, supra.* We hold, therefore, that because Hagans fulfilled all seven of the enumerated factors sufficient to grant her "eligible claimant" status, because she made a good faith effort to sue the drivers of the vehicles involved in her accident, because she did not wait to sue the drivers until the statute of limitations expired on her claim, and because she did not covertly work an arrangement where she would be paid by a tortfeasor so that she could work a double recovery from ACP benefits, she was not required to sue Shoona Fooks as owner of the vehicle in order to sustain

8. We do not find that our decision, under the facts of the present case, will work a negative effect on the viability and operation of ACPs. We continue to enforce the strict requirement that ACP claimants fulfill the seven eligibility factors under section 1752. In addition, any claimants who have not exercised good faith will not be susceptible to application of this favorable ruling.

her burden of proof under section 1752 and defeat Appellees' summary judgment motion. *Mangum, supra* (appellant, seeking to recover benefits from an ACP, bore the burden of proving, by a sufficient quantum of evidence, that he satisfied seven eligibility criteria under section 1752(a)).

Hagans next claims that because she was unable to find any evidence which would prove that Shoona Fooks was an actual tortfeasor in the case, she satisfied her burden of production as the non-moving party in the summary judgment motion. Specifically, she alleges that Appellees had the burden to show that evidence existed that would hold Shoona liable as a result of the accident; Appellees' failure to produce this evidence should have compelled the trial court to deny summary judgment. We agree.

It is the moving party's burden to prove that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). Once the moving party has met its burden, "[the non-movant] must set forth specific facts showing that there is a genuine issue for trial." *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 347, 571 A.2d 398, 402 (1989) (citation omitted); *see also Elder v. Nationwide Ins. Co.*, 410 Pa.Super. 290, 599 A.2d 996 (1991). On a motion for summary judgment it is the function of the trial court to determine whether there are controverted issues of fact, not whether there is sufficient evidence to prove the particular facts. *Troy v. Kampgrounds of America, Inc.*, 399 Pa.Super. 41, 581 A.2d 665 (1990).

Here, the Appellees, as movants, have stated that under 75 Pa.C.S.A. § 1756, Hagans was required to institute a "savings action" against Shoona Fooks in order to recover from an assigned claims plan under the MVFRL. Without suing Shoona, Appellees assert that they are entitled to summary judgment in their favor. As previously discussed, we do not find that Hagans was required to prove that she sued Shoona in order to recover benefits under an assigned claims plan. Rather, an ACP claimant must prove that he or she has met the seven factors outlined in 75 Pa.C.S.A. § 1752 in order to

establish eligibility for ACP benefits. There is no dispute or controverted issues of fact regarding whether Hagans fulfilled her section 1752 requirement. This she has clearly done. More important, however, the Appellees have failed to allege any facts, through affidavits, depositions or otherwise, showing that under the "tort liability of this Commonwealth," Shoona was negligent as the mere owner of the accident vehicle.

We, therefore, find that summary judgment was improperly granted in favor of Appellees; the Appellees were unsuccessful in proving that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. Under the facts of the present case, this court cannot find that the failure to institute suit against Shoona was a material issue to be proven at trial to recover, as a matter of law, from Appellees. *Thompson Coal, supra.* Accordingly, we find that the trial court committed an error of law in entering summary judgment, *Hetrick, supra;* the case was not "clear and free from doubt." *Troy,* 399 Pa.Super. at 46, 581 A.2d at 667. The trial court is instructed to conduct a proceeding, upon remand, in order to allow the parties to present facts proving or disproving Shoona Fooks' potential liability in the underlying accident. Upon this determination, the court may then determine whether Hagans is entitled to ACP benefits pursuant to 75 Pa.C.S.A. § 1752.

Order granting summary judgment in favor of Appellees reversed; case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.