**Brickman Group Ltd. v. CGU Insurance Co.**

*John N. Ellison,* for plaintiff.

*Joseph P. Dougher,* for defendants.

HERRON, *J.,* March 26, 2002—Presently before this court is defendant CGU Insurance Co.'s motion for partial reconsideration of this court's order of October 8, 2001, denying defendant CGU's motion for summary judgment. Plaintiff, the Brickman Group Ltd., has filed its response in opposition to the motion for reconsideration.

For the reasons set forth in this opinion, this court is granting the motion for partial reconsideration and entering summary judgment in favor of CGU on all remaining counts of plaintiff's amended complaint.

## BACKGROUND

This dispute arises over defendant CGU's alleged failure to abide by a purported agreement to sell a full program of various types of liability insurance to plaintiff Brickman under the same terms and conditions, including premium rates, for a six-year period between July 1, 1997, and July 1, 2003. (See second am. compl. ¶1.[1]) According to the complaint, the purported agreement, containing both oral and written promises, which sup-

---

1. On August 30, 2001, plaintiff filed a second amended complaint which amplified its factual averments to its breach of contract claims in Counts I and II, following this court's order and opinion, dated August 3, 2001, granting leave in part to file the amended complaint. The second amended complaint is to be treated as the only complaint before this court as it supersedes all previously filed complaints. See *Vetenshtein v. City of Philadelphia,* 755 A.2d 62, 67 (Pa. Commw. 2000) (an amended complaint virtually withdraws the original complaint and takes its place). (citations omitted)

posedly spanned six years, is referred to as the "insurance program guarantee." *Id.* at ¶¶9-15.

Certain material facts are undisputed. First and foremost, the parties do not dispute that the insurance policies sold to Brickman do not contain any of the terms of the insurance program guarantee. (See def.'s mem. of law in support of def.'s mot. for summ. j. at 5; pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 11.)[2] It is also undisputed that the insurance policies are annual policies, each having a term of 12 months from July 1 of one year to July 1 of the next year. (See def.'s mem. of law in support of def.'s mot. for summ. j. at 6; pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 12.) Further, it is undisputed that the insurance policies cover risks within the Commonwealth of Pennsylvania. (See def.'s mem. of law in support of def.'s mot. for summ. j. at 6; pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 12.) These same insurance policies contain both state-mandated and customized notice provisions, relating to "non-renewal notification" and "renewal premium quotation commitment." (See def.'s mem. of law in support of def.'s mot. for summ. j. at 6-8; pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 13-15.)

In addition, Brickman did not pay additional monies for the purported insurance program guarantee, beyond the premiums paid for the insurance policies. (See def.'s

2. Plaintiff does not dispute this fact but maintains that the insurance program guarantee is a distinct and separate contract, apart from the insurance policies, and that Pennsylvania law and the practice in the trade do not require rate guarantees to be attached as an endorsement to insurance policies. (See pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 11.) For the reasons set forth in the "discussion" section of this opinion, this court disagrees with this contention.

mem. of law in support of def.'s mot. for summ. j. at 11; pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 21.) Rather, Brickman relied upon the insurance program guarantee in moving its business from Royal Insurance Company to CGU in 1997. (See def.'s mem. of law in support of def.'s mot. for summ. j. at 12; pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 22.) And in the years that followed, Brickman remained with CGU instead of moving its insurance business in reliance on the insurance program guarantee. (See def.'s mem. of law in support of def.'s mot. for summ. j. at 12; pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 22-23.)

Even if other facts are in dispute, the above-stated undisputed facts are fatal to plaintiff's breach of contract claims since those claims are singularly based on the insurance program guarantee.

## DISCUSSION

In its motion for partial reconsideration, defendants focus on the narrow issue of whether the insurance program guarantee, upon which plaintiff bases its breach of contract claim(s), is unenforceable and illegal under Pennsylvania law because it violates 40 P.S. §275[3] and 40 P.S. §471[4] since this purported agreement is not specified in the insurance policies themselves. Plaintiff, in turn, argues that the insurance program guarantee cannot be considered a "rebate" or "inducement" as those terms

3. The Insurance Department Act of 1921, May 17, P.L. 789, art. VI, §635.

4. The Insurance Company Law of 1921, May 17, P.L. 682, art. III, §346.

are used in either section of title 40. Further, plaintiff argues that CGU's motion is untimely, having been filed approximately five months after this court's order, dated October 8, 2001.

Generally, "[m]otions for reconsideration are discouraged unless the facts or law not previously brought to the attention of the court are raised." S.A. Arbittier et al., Philadelphia Court of Common Pleas Civil Practice Manual, §7-2.8 (10th ed. 2000). A court has inherent power to reconsider its own rulings. *Moore v. Moore,* 535 Pa. 18, 25, 634 A.2d 163, 167 (1993); *Hutchison v. Luddy,* 417 Pa. Super. 93, 108, 611 A.2d 1280, 1288 (1992). See 42 Pa.C.S. §5505 (trial court may reconsider its own order within 30 days of entering the order). "The statute limiting the time for reconsideration of orders to 30 days applies only to final, appealable orders." *Hutchison,* 417 Pa. Super. at 108, 611 A.2d at 1288. "Where an order does not effectively place the litigant out of court or end the lawsuit, it is within the trial court's discretion to entertain a motion to reconsider the interlocutory order outside the 30-day time limit set forth in 42 Pa.C.S. §5505." *Id.*[5] See also, *Key Automotive Equipment Specialists Inc. v. Abernethy,* 431 Pa. Super. 358, 362, 636 A.2d 1126, 1128 (1994) (holding that trial court properly exercised its discretion to sua sponte reconsider its order, denying preliminary objections, beyond the 30-day time limit as the order was interlocutory).

Under the Pennsylvania Rules of Civil Procedure, the court must grant summary judgment if (1) there is no

---

5. Here, defendants' motion for reconsideration is of an order which is interlocutory in nature, and, thus, the 30-day time limit does not apply though the motion was filed within that time limit.

genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery or expert report, or (2) after the completion of discovery, a party bearing the burden of proof on an issue has failed to produce evidence of facts essential to the cause of action or defense such that a jury could return a verdict in his favor. Pa.R.C.P. 1035.2. The moving party has the "burden to prove that there is no genuine issue of material fact." *Hagans v. Constitution State Service Co.,* 455 Pa. Super. 231, 254, 687 A.2d 1145, 1156 (1997). Once the moving party meets this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 254, 687 A.2d at 1156. The trial court's function is to "determine whether there are controverted issues of fact, not whether there is sufficient evidence to prove the particular facts." *Id.* at 254, 687 A.2d at 1157. A motion for summary judgment "must be viewed in the light most favorable to the non-moving party, and all doubts as the existence of a genuine issue of material fact must be resolved against the moving party." *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." *Skipworth v. Lead Industries Association Inc.,* 547 Pa. 224, 230, 690 A.2d 169, 171 (1997).

Under Pennsylvania law, insurance agents and insurance companies are prohibited from offering or granting premium rebates, special advantages or other inducements to a prospective client to secure an insurance con-

tract where such offers are not incorporated within the policies. See 40 P.S. §275; 40 P.S. §471. Section 275 reads in pertinent part:

"No insurance agent, solicitor or broker, personally or by any other party, shall offer, promise, allow, give, set off, or pay, *directly or indirectly,* any rebate of, or part of, the premium payable on the policy . . . or other benefit founded, arising, accruing or to accrue thereon or therefrom, or any special advantage in date of policy or age of issue, or any paid employment or contract for services of any kind, or any other valuable *consideration or inducement,* to or for insurance on any risk in this Commonwealth, now or hereafter to be written, which is *not* specified in the policy contract of insurance; nor shall any such agent, solicitor, or broker, personally or otherwise, offer, promise, give, option, sell or purchase any stocks, bonds, securities, or property or any dividends or profits accruing or to accrue thereon, or other thing of value whatsoever, as *inducement* to insurance or in connection therewith. . . ." 40 P.S. §275. (emphasis added) Section 471, which applies to insurance companies, associations or exchanges, including its officers or members, contains a parallel provision that similarly prohibits insurance companies from offering any special advantage or inducement which is not specified in the insurance policy. 40 P.S. §471.

"The object of this legislation is to outlaw unfair treatment of prospective insurance clients of the same class." *Blouch v. Clifford R. Zinn & Son Inc.,* 350 Pa. Super. 327, 331, 504 A.2d 862, 864 (1986) (citing *McDowell v. Good Chevrolet-Cadillac,* 397 Pa. 237, 242, 154 A.2d

497, 500 (1959)). As stated by the Pennsylvania Supreme Court:

"The thrust of the anti-rebate provisions of the statute is against the placement of insurance whereby the insured secures the insurance at a favored rate, regardless of the mode of the manner in which such favored rate is obtained. The court below well stated that 'as is universally stated and recognized, a reduction of cost is the test of whether or not the statute is being violated' . . . ." *McDowell,* 397 Pa. at 242-43, 154 A.2d at 500. See also, 5 Couch on Insurance §69.33 (3d ed. 1996) ("The purpose of statutes prohibiting discrimination and of anti-rebate statutes is to protect the solvency of the insurance companies, prevent unfair discrimination among insureds of the same class, protect the quality of service, avoid concentration of the market in a few insurance companies, and avoid unethical sales practices.").

Defendant relies upon *American Association of Meat Processors v. Casualty Reciprocal Exchange,* 527 Pa. 59, 588 A.2d 491 (1991). In that case, the defendant insurer paid a rebate to the plaintiff association based on a percentage of the premiums paid to the insurer under the workers' compensation insurance program. *Id.* at 62, 588 A.2d at 493. The payments were made to the association under assignments made by the association's insured members. *Id.* In the final year, the defendant insurer failed to pay a dividend or rebate to the association and the association brought a breach of contract action against the insurer. *Id.* The rebate arrangement was pursuant to an oral agreement which was not set forth in the policy. *Id.* at 63, 588 A.2d at 493. Both the trial court and the Superior Court upheld the judgment in favor of the asso-

ciation. *Id.* at 63, 588 A.2d at 493. The Pennsylvania Supreme Court reversed based on 40 P.S. §275, determining that the statute did apply and that the defendant insurer did not waive the illegality of the contract by failing to raise the issue until post-trial motions. *Id.* at 67-68, 588 A.2d at 495-96. As stated by the court, "*whenever* it appears that the enforcement of a contract would violate public policy, the court should dismiss the proceedings of its own motion." *Id.* at 68, 588 A.2d at 496. (emphasis in original)

Plaintiff, in turn, relies upon *Commonwealth v. Fuhrer,* 52 D.&C.2d 142 (Dauphin Cty. 1970), *aff'd,* 218 Pa. Super. 867, 279 A.2d 233 (1971), which involved an appeal of an adjudication of the Pennsylvania Insurance Commissioner which suspended the insurance agent's license and imposed a fine upon him, based on the determination that he violated section 275 in offering an inducement to obtain insurance business. 52 D.&C.2d at 142-43. The agent, acting on behalf of an insurance company had an arrangement with a bank, pursuant to which the bank would collect premiums for credit life insurance for the bank's consumer loan customers. *Id.* at 142. The bank would thereby retain the monies in an account which maintained a minimum balance and would afford the accrual of interest. *Id.* The court found that there was no evidence that the agent made representations to prospective insureds or customers of the bank, but that the insurance rate that would be charged would be as prescribed by the Insurance Department without exception or qualification. *Id.* at 145. The court also found no evidence that the agent made any offer or inducement to make it possible for insureds to obtain insurance from

his company at favored rates. *Id.* It, therefore, held that the agent did not violate the relevant sections of the Insurance Department Act. *Id.* at 146.

Here, it is undisputed that the insurance program guarantee was not incorporated in the insurance policies sold to Brickman. Further, Brickman concedes that it relied on the insurance program guarantee in moving its business from Royal to CGU and in remaining with CGU. (See second am. compl. ¶¶15-16, 22-23, 25.) Plaintiff, indeed, contends that the insurance program guarantee is a separate and distinct contract from the insurance policies. (See pl.'s mem. of law in opposition to def.'s mot. for summ. j. at 11.) This very argument proves fatal to plaintiff's breach of contract claims.

"As a general rule, an agreement which violates a statutory provision, 'or which cannot be effectively performed without violating [a] statute, is illegal, unenforceable and void ab initio.' " *Watrel v. Commonwealth, Department of Education,* 88 Pa. Commw. 1, 5, 488 A.2d 378, 381 (1985), *aff'd,* 513 Pa. 61, 518 A.2d 1158 (1986). See also, *Bollinger Co. v. Widmann Brewing Corp.,* 339 Pa. 289, 293, 14 A.2d 81, 83 (1940) ("courts will not lend their aid to the enforcement of unlawful contracts which are founded upon transactions in violation of a public policy declared by the legislature.").

Thus, here, similar to *American Ass'n of Meat Processors,* the insurance program guarantee was not incorporated or endorsed within the insurance policies. Further, it seems clear that the insurance program guarantee was an "inducement" or special advantage to purchase insurance. As such, it may be deemed illegal under either 40 P.S. §275 or 40 P.S. §471. While this court does

not condone the making of illegal contracts by insurers to avoid liability to their insureds, this court cannot enforce the insurance program guarantee and must grant summary judgment in favor of CGU on the breach of contract claims, which are the only remaining claims in the second amended complaint.

## CONCLUSION

For the reasons set forth above, this court is entering a contemporaneous order, granting the motion for partial reconsideration and granting summary judgment in favor of CGU on the breach of contract claims.

## ORDER

And now, March 26, 2002, upon consideration of defendant CGU Insurance Co.'s motion for partial reconsideration of the order, dated October 8, 2001, denying defendant's motion for summary judgment, plaintiff's response in opposition thereto, all other matters of record and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered that the motion for partial reconsideration is granted and summary judgment is entered in favor of CGU Insurance Company and against The Brickman Group Ltd. on the remaining counts of the second amended complaint, sounding in breach of contract.