1999 PA Super 38

**Diana McGEE, Appellant,**

v.

**PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIM PLAN, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1999.

Filed Feb. 23, 1999.

**1240**

John M. Sheridan, Media, for appellant.

Arthur B. Keppel, Philadelphia, for appellee.

Before KELLY, MONTEMURO *, JJ., and CIRILLO, President Judge Emeritus.

MONTEMURO, J.:

¶ 1   Appellant/Plaintiff, Diane McGee appeals from the judgment entered May 28, 1998 in the Philadelphia County Court of Common Pleas in favor of Appellee/Defendant, the Pennsylvania Assigned Claims Plan. Appellant presents the novel issue of whether an injured party, otherwise entitled to uninsured motorists benefits under the Assigned Claims Plan,[1] 75 Pa.C.S.A. §§ 1751–1757, forfeits her rights to those benefits when, after notifying and seeking the consent of the Plan, she settles with and releases a third party insured tortfeasor. Because we conclude that Appellant took reasonable steps to preserve the statutory subrogation rights of the Plan, we reverse.

¶ 2   This case arises from a motor vehicle accident which occurred on the morning of November 15, 1994. Appellant was a legitimately uninsured passenger in an unlawfully uninsured automobile owned and operated by George Starkey. Immediately preceding the

accident, Starkey was stopped in traffic about six cars back from a red light at an intersection. When the light turned green, Starkey proceeded with traffic, but stopped close to the intersection so that Appellant could purchase a newspaper for him from a street vendor. Starkey's car was then struck from behind by an insured vehicle driven by John Pollard. Appellant suffered soft tissue injury in the accident.

¶ 3   On January 18, 1996, Appellant executed a settlement and release with Pollard in exchange for his insurance agency's tender of the $15,000 policy limit. Prior to signing the release, Appellant's counsel notified the Assigned Claims Plan (ACP) of the proposed settlement and sought its consent. The ACP responded by letter stating that Appellant was not entitled to any uninsured motorist benefits under the Plan because she was not an eligible claimant.

¶ 4   On February 8, 1996, Appellant filed a complaint against the ACP seeking, *inter alia*, uninsured motorist benefits. The ACP filed a motion for summary judgment on March 7, 1997, which was subsequently denied by the trial court. The case proceeded to mandatory arbitration, and, on July 23, 1997, an arbitration panel awarded Appellant $15,000. The ACP appealed to the trial court, and a non-jury trial was held on March 23, 1998. On May 7, 1998, the trial court entered a dispositional order, including findings of fact and legal analysis, ruling that Appellant was precluded from recovering uninsured motorist benefits under the Plan because: (1) Appellant was an "ineligible claimant" under the ACP since she received first party benefits by virtue of her settlement with Pollard, 75 Pa.C.S.A. § 1752(a)(6); and (2) Appellant's release of Pollard impaired the Plan's subrogation rights, *id.* at § 1756. Appellant filed post-trial motions which were denied by Order dated May 28, 1998; in that Order, the court also entered judgment for the ACP.

* Retired Justice assigned to Superior Court.

1.   The Assigned Claims Plan, created as part of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701 *et seq.*, provides benefits up to $15,000 to eligible claimants injured in motor vehicle accidents involving uninsured drivers. *See Id.* at § 1754.

¶ 5   In this timely appeal, Appellant contends that the trial court erred as a matter of law in: (1) concluding that she is an "ineligible claimant" under the Plan; (2) concluding that the release of an insured joint tortfeasor prejudices the ACP's subrogation rights; and (3) concluding that the ACP may deny uninsured motorist benefits to an otherwise eligible claimant who, despite releasing a third party tortfeasor, took reasonable steps to protect the Plan's subrogation rights. We will address these issues *seriatim.*

¶ 6   In reviewing a case on appeal from a non-jury trial, we must determine whether the trial court's factual findings, which have the same weight and effect as a jury verdict, are supported by competent, record evidence, and whether the trial court erred in applying the law to the facts. *Olmo v. Matos,* 439 Pa.Super. 1, 653 A.2d 1, 3 (1994*), appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995). Our scope of review of questions of law is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

¶ 7   The Assigned Claims Plan was created "to provide limited benefits to those individuals who are injured in a motor vehicle-related accident who, through no fault of their own, have no other available source of insurance coverage." *Mangum v. Pennsylvania Financial Responsibility Assigned Claims,* 449 Pa.Super. 1, 672 A.2d 1324, 1326 (1996). The specific statutory provisions that govern application for and payment of these benefits are found in Subchapter E of the MVFRL, 75 Pa.C.S.A. §§ 1751–1757. The Plan provides medical benefits, up to a maximum of $5,000, *id.* at § 1753, and additional coverage for "losses or damages suffered as a result of the injury up to $15,000[,]" less any medical benefits paid under section 1753. *Id.* at § 1754. The statute specifically entitles the ACP to recover benefits paid from liable parties:

§ 1756.   Subrogation

The Assigned Claims Plan or its assignee is entitled to recover, in accordance with the tort liability law of this Commonwealth, reimbursement for benefits or coverages paid, loss adjustment costs and any other sums paid to an eligible claimant under this subchapter.

An injured party seeking benefits, however, must first qualify as an eligible claimant by meeting seven criteria outlined in section 1752(a).[2]

■ ¶ 8   Appellant's first issue challenges the trial court's conclusion that she is not an eligible claimant because she failed to satisfy the requirement in section 1752(a)(6) that she be "otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident." *Id.* at § 1752(a)(6). Relying on the holding in *Walker· v. Fennell,* 426 Pa.Super. 469, 627 A.2d 771 (1993), the court reasoned that Appellant had received first party benefits from her settlement with Pollard; therefore, she was not entitled to uninsured benefits under the ACP. Appellant contends, however, that the settlement did not constitute first party benefits; thus she meets the eligibility requirements under § 1752. We agree.

¶ 9   As a legitimately uninsured occupant of an illegally uninsured motor vehicle, Appellant was not entitled to first party benefits under any insurance policy. Section 1713 of the MVFRL sets forth the order of priority in which an injured party may collect first party benefits:

(1)   For a named insured, the policy on which he is the named insured.

(2)   For an insured, the policy covering the insured.

(3)   For the occupants of an insured motor vehicle, the policy on that motor vehicle.

(4)   For a person who is not the occupant of a motor vehicle, the policy on any

2.   These criteria include, *inter alia,* that the injured party is a resident of the Commonwealth, was injured in a motor vehicle accident occurring in the Commonwealth, and is not the owner of a motor vehicle. *See Id.* Subsection (b) also disqualifies an otherwise eligible claimant if she

is injured while intentionally injuring herself or another or attempting to do so, committing a felony, seeking to evade lawful apprehension or arrest, or knowingly converting a motor vehicle. *Id.* at § 1752(b).

motor vehicle involved in the accident. For the purpose of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury.

*Id.* Clearly, Appellant does not fall into any of these categories.

¶ 10 Moreover, the trial court's reliance on *Walker* is misplaced. In that case, an insured vehicle which had been struck from behind by an uninsured vehicle struck a pedestrian. The pedestrian received benefits from the insured motorist, and then attempted to collect uninsured benefits from the ACP. A panel of this Court upheld a trial court order granting summary judgment in favor of the ACP because the pedestrian had collected first party benefits pursuant to § 1713(a)(4): he was not an occupant of a motor vehicle, and he collected benefits from one of the insured vehicles involved in the accident. As Appellant was a legally uninsured occupant of an uninsured vehicle at the time of the accident, we agree that she was an eligible claimant under the Plan.

¶ 11 We note that, in its brief, the ACP does not contest Appellant's eligibility under § 1752(a). Although it refers to the trial court's reliance on § 1752(a)(6) and *Walker* as "imprecise," the ACP argues that both stand for the proposition "that a person who has recovered from some other source cannot recover from the Plan[.]" (ACP's Brief at 15–16). We disagree. Section 1752(a)(6) and *Walker* hold that an injured party who has recovered **first party benefits** under an insurance policy may not recover under the ACP. Neither the MVFRL nor the case law discussed *infra* suggests that a legitimately uninsured injured party may only recover from one source.

¶ 12 Appellant's last two issues focus on the trial court's conclusion that Appellant's settlement with and release of Pollard so prejudiced the ACP's subrogation rights as to preclude Appellant from recovering benefits under the Plan. Because the ACP was created to provide benefits to those injured in motor vehicle accidents who have no other form of insurance protection, its subrogation rights are essential to preserve the

fund and prevent double recovery by a claimant. *Dyer v. Travelers*, 392 Pa.Super. 202, 572 A.2d 762, 764 (1990); *Melendez v. Pennsylvania Assigned Claims Plan*, 384 Pa.Super. 48, 557 A.2d 767, 769 (1989)("Frustrating the subrogation rights of an ACP designated insurer would no doubt weaken the Plan."). Therefore, our Court has generally disfavored any action by a claimant that adversely affects the ACP's statutory right to subrogation. *See Torres v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 435 Pa.Super. 325, 645 A.2d 1322, *appeal denied*, 540 Pa. 585, 655 A.2d 516 (1994)(affirming summary judgment for ACP when claimant failed to file action against tortfeasors within statute of limitations); *Walker v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 398 Pa.Super. 125, 580 A.2d 872 (1990)(affirming summary judgment for ACP when claimant failed to inform ACP of arbitration hearing with tortfeasors, failed to appear for arbitration hearing, and caused judgment to be entered against her); *Dyer, supra* (affirming summary judgment for ACP when claimant obtained arbitration award against tortfeasor without ACP's consent); *Melendez, supra* (affirming summary judgment for ACP when claimant settled and released third party tortfeasor without ACP's knowledge or consent). *But see Hagans v. Constitution State Service Co.*, 455 Pa.Super. 231, 687 A.2d 1145 (1997)(reversing summary judgment for ACP; although claimant failed to join owner of one vehicle in suit against drivers, no evidence presented that owner was responsible for accident or injuries).

¶ 13 Based on this principle, the trial court held that Appellant's release of Pollard prejudiced the subrogation rights of the Plan. However, a critical distinction in the present case is Appellant's good faith effort to preserve the Plan's subrogation rights by seeking ACP's consent before settling with Pollard.

¶ 14 Beginning with *Melendez, supra*, this Court has consistently denied uninsured motorist benefits to claimants who have taken action, without the consent or approval of the ACP, that has effectively destroyed the Plan's statutory subrogation rights. In *Me-*

*lendez*, the claimant obtained an arbitration judgment against a third party tortfeasor and thereafter executed a release in her favor. *Melendez*, 557 A.2d at 767. We held that "it would be imprudent policy to permit double recovery by an ACP claimant who has released a tortfeasor at the expense of the subrogation rights of the Plan." *Id.* 557 A.2d at 769.

¶ 15 In *Dyer*, *supra*, we considered whether an arbitration award obtained by a claimant against third party tortfeasors, without the consent or participation of the ACP, has the same effect of prejudicing the Plan's subrogation rights. *Dyer*, 572 A.2d at 762. In concluding that it does, we reasoned that

> Dyer proceeded without The Travelers[3] and The Travelers was therefore not in a position to assert Dyer's rights. The Travelers had no control over any aspect of the proceedings which resulted in the arbitration award. Appellant so prejudiced the Travellers' [sic] right to subrogation as to extinguish it. . . . It would be imprudent policy to place the Plan in a position where it would be forced to accept the consequences of a claimant's actions which were taken without its consent.

*Id.* 572 A.2d at 764. Similarly, in *Walker*, *supra*, the claimant failed to appear for an arbitration hearing in her action against the tortfeasor; therefore, judgment was entered against her. *Walker*, 580 A.2d at 873. Our Court held that the claimant's actions extinguished the Plan's subrogation rights.

> [T]he record in this case is clear that Travelers was not given notice of appellant's action against the tortfeasor and was not

invited to join therein. Nevertheless, without the insurance carrier's consent, appellant proceeded to extinguish the carrier's subrogation rights.

*Id.* 580 A.2d at 874.

¶ 16 The present case is distinguishable for two reasons. First, Appellant informed the ACP of the proposed settlement and requested its consent. In addition, because the trial court apportioned liability, and found the uninsured motorist liable in excess of $15,000, Appellant's settlement with the insured driver did not prejudice the ACP's subrogation rights.

¶ 17 On November 17, 1995, prior to her settlement with and release of Pollard, Appellant wrote a letter to the ACP informing it of Pollard's settlement offer and requesting either its consent or, alternatively, its tender of the $15,000 offered so as to protect its subrogation rights. *See* Plaintiff's Reply to Defendant's Motion for Summary Judgment, Exhibit 6, Letter from Appellant to ACP, dated 11/17/95. The Plan responded by letter three days later stating that it would take no further action on Appellant's claim since it believed she was an ineligible claimant. *See Id.* at Exhibit 7, Letter from ACP to Appellant, dated 11/20/95. Appellant's release of Pollard was dated January 18, 1996, almost two months after Appellant informed the ACP of the possible settlement. Clearly, Appellant made a good faith effort to preserve the Plan's subrogation rights. The fact that the Plan chose to ignore Appellant's efforts and held firm to its decision that Appellant was an ineligible claimant should not be weighed against Appellant.[4]

---

3. The Travelers was sued as the designee of the Pennsylvania Financial Responsibility Assigned Claims Plan. *Id.* 572 A.2d at 762. Under the ACP, "assigned claims plans are not assigned to individual insurance companies[; r]ather, the plan collects surcharges from all companies doing business in Pennsylvania and contracts with an individual company to handle a claim." *Hagans*, 687 A.2d at 1148 n. 4 (citing *Westbrook v. Robbins*, 416 Pa.Super. 543, 611 A.2d 749, 753 (1992)).

4. In *Hagans*, *supra*, we recognized a claimant's good faith effort to preserve the subrogation rights of the Plan in another context. There, the claimant, a passenger, sued the drivers of the

vehicles involved in the accident, but failed to name the owner of one of the vehicles in the suit. *Hagans*, 687 A.2d at 1147. The trial court granted summary judgment to the ACP finding that the claimant's failure to sue the owner prejudiced the Plan's subrogation rights. *Id.* at 1148. We reversed, concluding that there was no evidence presented that the owner would be liable for any of the damages. *Id.* at 1156. In distinguishing the *Melendez* line of cases, we noted that

> [n]ot one of those cases, however, has involved facts where an injured passenger makes a good faith effort to sue all persons actually involved in an accident, well within the statute of limitations period, without releasing or set-

¶ 18 Moreover, unlike *Dyer* and *Walker*, in this case the ACP had the opportunity to litigate the issue of liability. After hearing evidence presented by both Appellant and the Plan, the trial court found that Appellant was entitled to $22,000 in damages and apportioned liability 70% to Starkey, the uninsured motorist, and 30% to Pollard, the insured motorist. Thus, Starkey's proportionate share of the damages is $15,400, in excess of the $15,000 limit under the Plan, and according to the trial court's apportionment of liability, the ACP would not be entitled to recover any benefits paid from Pollard.[5]

¶ 19 The ACP argues, however, that a judgment for Appellant would result in a double recovery, which this Court specifically repudiated in *Rossi v. State Farm Auto. Ins. Co.*, 318 Pa.Super. 386, 465 A.2d 8 (1983). (ACP's Brief at 13). In *Rossi*, the plaintiff settled her claims against the insured driver of the car in which she was a passenger when she was injured, and then proceeded to make a claim against the driver's uninsured motorist coverage under the same policy. *Id.* at 9. We reversed a trial court order confirming an arbitration award for the plaintiff so as to prevent a double recovery. *Id.*

> We therefore reject the notion that Rossi may have a duplicate recovery for her injuries simply because they fall within two separate and distinct coverages provided by the [driver's] policy. We cannot in equity and good conscience allow Rossi to receive more than one satisfaction for her injuries, by permitting her to be twice compensated for them at the expense of State Farm and [the driver].

*Id.* at 11. The present case is clearly distinguishable, however, in that *Rossi* involved a plaintiff's attempt to collect uninsured motorist benefits from the same insurance policy under which she settled and released her liability claims; that case did not implicate the ACP. In addition, the arbitrators' uninsured motorists' award in *Rossi* was only $500 more than the settlement; the Court concluded that "[t]his does not represent the accrual of additional compensable loss by Rossi, but it is merely a difference of opinion as to the value of Rossi's general damages." *Id.* at 10. Here, the trial court's determination of damages was $7,000 more than Appellant's settlement with Pollard. Thus, we find the ACP's reliance on *Rossi* misplaced.

¶ 20 Although we conclude that judgment in this case must be reversed, we decline to grant Appellant's request that we order the trial court to enter judgment in her favor in the amount of $15,000. The MVFRL provides that an eligible claimant under the ACP **"may** recover for losses or damages suffered as a result of the injury **up to** $15,000[.]" 75 Pa.C.S.A. § 1754. The statute does not mandate that a trial court award the $15,000 maximum in every case in which an uninsured driver is held liable for damages in excess of that amount. We find that, consistent with the goal of the Plan to provide benefits "for those individuals who, through no fault of their own, have **no other available source** of insurance coverage[,]" *Pennsylvania Assigned Claims Plan v. English*, 541 Pa. 424, 429, 664 A.2d 84, 86 (1995)(emphasis added), the trial court may consider the $15,000 settlement in fashioning a judgment against the Plan. As with all damage awards in a non-jury trial, we leave the determination to the discretion of the trial judge.[6]

---

tling with such persons. To preclude recovery under this latter factual scenario is not only against the basic policy of awarding benefits to eligible claimants, but is also contrary to the equitable principles underlying the concept of subrogation. *Id.* at 1152.

5. We specifically reject the argument proposed by the Pennsylvania Trial Lawyers Association in its Amicus Brief that the ACP does not provide for subrogation against insured joint tortfeasors in any case. *See* Amicus Brief at 3–4. Section 1756 provides that the Plan is entitled to recover benefits paid "in accordance with the tort liabili-

ty law of this Commonwealth." 75 Pa.C.S.A. § 1756. It does not limit recovery to uninsured drivers.

6. We reject the argument in the Amicus Brief that the trial court should be precluded from reducing the benefits payable under the Plan by the amount Appellant received in her settlement with Pollard because no provision under the ACP specifically provides for this reduction. *See* Amicus Brief at 14–15. We cannot ignore the language of section 1754, which states that a claimant "may" recover benefits up to a maximum of $15,000. 75 Pa.C.S.A. § 1754.

¶ 21 Accordingly, we reverse the May 28, 1998 judgment and remand to the trial court for proceedings consistent with this Opinion.[7]

¶ 22 Judgment reversed and case remanded. Jurisdiction relinquished.

---

7. Although the trial court's award of $22,000 included Appellant's medical expenses, we make no determination at this time regarding the ACP's argument that Appellant's medical expenses are not recoverable under the statute.