James KIKER, Appellee,

v.

**PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN and Constitution State Service Company, Appellants.**

Superior Court of Pennsylvania.

Argued June 22, 1999.
Filed Oct. 20, 1999.
Revised Oct. 22, 1999.

William P. Marshall, Lansdale, for appellants.

Andrew R. Speigel, Bala Cynwyd, for appellee.

Before ORIE MELVIN, SCHILLER and LALLY–GREEN, JJ.

SCHILLER, J.:

¶ 1 Appellants, Pennsylvania Financial Responsibility Assigned Claims Plan and Constitution State Services Company (hereinafter, collectively, "the ACP"), appeal the judgment entered in the Court of Common Pleas on January 15, 1999, awarding Appellee, James Kiker, $5,000.00. We affirm.

FACTS:

¶ 2 On August 1, 1994, Appellee, a fifty-two year old self-employed bike repair man, was injured on Lauriston Street in Roxborough, when a driver opened her car door into the street causing him to fall off his bike and onto the pavement. He sustained injuries to his shoulder, knee, face and hand, and chipped his ankle. His ankle also had a six inch gash where a scar remains. The woman took Appellee into a nearby house where she allowed him to wash up and gave him a glass of water. She refused to drive Appellee to the hospital, but agreed to drive him to his mother's house three blocks away and to follow him to the hospital. The woman failed to ap-

pear at the hospital; while being treated there, Appellee reported the accident to the police. The police report shows the address of the Lauriston Street house, but Appellee could not provide the woman's name or the car's license plate number.[1] Subsequently, Appellee's sister and Appellants undertook efforts to find the woman but she remained unidentified.

¶3 On April 29, 1996, Appellee, who did not own a car and did not reside with an insured, filed a claim for benefits with the ACP. The ACP found Appellee an eligible claimant and paid his medical bills totaling $1041.65. Appellants refused to pay additional benefits claiming Appellee had failed to protect their subrogation rights by not determining the identity of the tortfeasor. After arbitration,[2] the matter proceeded to a non-jury trial before the Honorable Louis G. Hill, who on August 25, 1996, found for Appellee in the amount of $5,000.00. Oral post-trial motions were denied; Appellants then filed an appeal to this Court which was quashed. On September 15, 1998, the Honorable Marvin R. Halbert granted Appellants' motion to file a written post-trial motion *nunc pro tunc.* That motion was denied on January 15, 1999. Appellants timely appeal.

DISCUSSION:

Appellants raise the following two issues:

 I. Whether an Assigned Claims Plan claimant has a duty to perform a good faith investigation to identify

the tortfeasor to protect the subrogation rights of the plan?

 II. Whether plaintiff who visited with the tortfeasor in her home and in her car after the accident and knew where the tortfeasor lived but failed to obtain the tortfeasor's identity prejudiced the defendant's [sic] subrogation rights entitling defendant's [sic] to judgment notwithstanding the verdict?

Appellants' Brief, at 3. In effect, Appellants have raised only one issue: whether Appellee prejudiced the subrogation rights of the ACP by failing to identify the tortfeasor immediately after the accident occurred and by not undertaking an investigation to identify her after she failed to accompany him to the hospital.[3]

¶4 When reviewing a motion for judgment notwithstanding the verdict,[4] the evidence must be viewed in the light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact. Any conflict in the evidence must be resolved in the verdict winner's favor. *Nogowski v. Alemo–Hammad,* 456 Pa.Super. 750, 691 A.2d 950, 956, *appeal denied,* 550 Pa. 684, 704 A.2d 638 (1997). "There are two bases upon which a j.n.o.v. can be entered: one, the movant is entitled to a judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Simmons v. Pacor, Inc.,* 543 Pa. 664, 672, 674 A.2d 232, 236 (1996). We will reverse the

---

**1.** There is no indication in the record whether the police undertook any investigation to track down the tortfeasor.

**2.** The arbitration hearing on January 21, 1997, resulted in an award of $13,958.35 for Appellee.

**3.** As the Honorable Marvin J. Halbert stated: "[t]he sole issue raised in defendant's post-trial motion is whether the Plaintiff failed to protect the subrogation rights of the plan by failing to identify the tortfeasor after the said accident occurred." Trial Court Opinion, 1/15/99, at 1.

**4.** Pennsylvania Rule of Civil Procedure 227.1 allows any party to file post-trial motions, including a motion that the court "direct the entry of judgment in favor of any party." This rule replaces several previous post-trial motions, including the motion for judgment notwithstanding the verdict, which was traditionally labeled a motion for judgment *non obstante veredicto* (commonly referred to as a motion for judgment n.o.v.). *See* Pa.R.C.P. 227.1, Note.

lower court only if we find an abuse of discretion or error of law which determined the outcome of the case. *Trude v. Martin*, 442 Pa.Super. 614, 660 A.2d 626, 630 (1995).

¶ 5 Appellants assert that to protect the subrogation rights of the ACP a claimant has a duty under *Hagans v. Constitution State Service Co.*, 455 Pa.Super. 231, 687 A.2d 1145 (1997), to exercise good faith efforts to identify the tortfeasor and to obtain relevant vehicle information. In this instance, they contend that Appellee had several opportunities to determine the tortfeasor's identity and failed to do so. Thus, they argue that Appellee not only detrimentally affected the ACP's subrogation rights but also circumvented the legislature's policy that accidents involving an unidentified vehicle be reported in detail to the police in order for the vehicle to qualify as an uninsured motor vehicle. 75

Pa.C.S. § 1702.[5] They also contend ACP claimants have an obligation to commence a timely "savings action" against a tortfeasor. *Torres v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 435 Pa.Super. 325, 645 A.2d 1322, 1324, *appeal denied*, 540 Pa. 585, 655 A.2d 516 (1994). We disagree with Appellants' overbroad reading of *Hagans, supra*, and with their attempt to create additional eligibility requirements for victims of uninsured motorists by conflating statutory provisions of the Motor Vehicle Financial Responsibility Law (MVFRL),[6] 75 Pa.C.S. § 1701 *et seq.*[7]

¶ 6 The Assigned Claims Plan was established as part of the MVFRL "to provide limited benefits to those individuals who are injured in a motor vehicle-related accident who, through no fault of their own, have no other available source of insurance coverage."[8] *McGee v. Penn-*

**5.** § 1702. **Definitions**
"**Uninsured motor vehicle.**" Any of the following:
. . . .
(3) An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority. . . .
75 Pa.C.S. § 1702.

**6.** Act of Feb.12, 1984, 26, No. 11, § 3, effective October 1, 1984.

**7.** We note that Appellants do not claim that Appellee is ineligible to recover benefits under 75 Pa.C.S. § 1752, which states:
Section 1752. **Eligible claimant**
(a) **General rule.**—A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements:
(1) Is a resident of this Commonwealth.
(2) Is injured as the result of a motor vehicle accident occurring in this Commonwealth.
(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).
(4) Is not the operator or occupant of a motor vehicle owned by the Federal Government or any of its agencies, departments or authorities.
(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is

immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.
(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.
(7) Is not the operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle or motorized pedalcycle or other like type vehicle required to be registered under this title and involved in the accident.
75 Pa.C.S. § 1752(a).

**8.** The statutory provisions governing the Assigned Claims Plan (ACP) and payments under the Plan are found in Subchapter E of the MVFRL, 75 Pa.C.S. §§ 1751–1757. The legislature set up the ACP to provide limited statutory benefits to certain "eligible claimants" injured in automobile-related accidents who are not entitled to recover other insurance benefits. The ACP is not an insurance company but rather an administrative organization that distributes the financial responsibility for those limited statutory benefits among Pennsylvania's automobile insurers as a cost of doing business and through the insurers' policy holders. *Hodges v. Rodriguez*, 435 Pa.Super. 360, 645 A.2d 1340, 1347 (1994).

*sylvania Financial Responsibility Assigned Claim Plan*, 725 A.2d 1239, 1241 (Pa.Super.1999) (quoting *Mangum v. Pennsylvania Fin. Responsibility Assigned Claims*, 449 Pa.Super. 1, 672 A.2d 1324, 1326 (1996)). Under the ACP, medical benefits up to $5,000[9] and additional uninsured motorist benefits for "losses or damages suffered as a result of the injury up to $15,000" less any medical benefits paid under Section 1753[10] are available. However, under the subrogation provision of the statute, the ACP is entitled to recover benefits paid to ACP claimants from liable parties. Specifically,

> [t]he Assigned Claims Plan or its assignee is entitled to recover, in accordance with the tort liability law of this Commonwealth, reimbursement for benefits or coverages paid, loss adjustment costs and any other sums paid to an eligible claimant under this subchapter.

75 Pa.C.S. § 1756.

¶ 7 The goal of subrogation is "to place the burden of the debt upon the person who should bear it." *Daley–Sand v. West Am. Ins. Co.*, 387 Pa.Super. 630, 564 A.2d 965 (1989) (quoting *Allstate Ins. Co. v. Clarke*, 364 Pa.Super. 196, 527 A.2d 1021, 1023 (1987)). Thus, through subrogation. the insurer is granted the right "to stand in the shoes of the claimant and assert the claimant's rights against the tortfeasor." *Dyer v. Travelers*, 392 Pa.Super. 202, 572 A.2d 762 (1990)(citing *Daley–Sand v. West Am. Ins. Co., supra*). Exercising these rights helps preserve the ACP fund and prevents double recovery by a claimant. *McGee, supra*, 725 A.2d at 1242. Thus, extinguishing a subrogee's statutory right to be reimbursed is generally disfavored. *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84 (1995). However, the insurer, as subrogee, can only recover damages when his subrogor has a legally cognizable cause of action against a third party, *Hagans, supra*, (citing *Brinkley v.*

*Pealer*, 341 Pa.Super. 432, 491 A.2d 894, 898 (1985)), making the right to subrogation contingent on the ACP claimant's having a cause of action against a known tortfeasor. *Id.* at 1152.

¶ 8 Interpreting Section 1756 in this context, this Court has held that an ACP claimant's conduct in a related tort action can sufficiently prejudice the ACP's subrogation rights to the extent that the claimant forfeits his right to benefits under the Plan. Specifically, when a personal injury action has been instituted against known tortfeasors, we have found that ACP claimants forfeit their rights if: 1) without notice to the ACP, they initiate a suit against the uninsured tortfeasor, permit judgment to be entered against them, and fail to appeal, *Walker v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 398 Pa.Super. 125, 580 A.2d 872 (1990); 2) without notice to the ACP, they prosecute the tortfeasor to an unappealed final arbitration award, *Dyer, supra*; and 3) without the consent of the ACP, they prosecute the tortfeasor to a final arbitration judgment and execute a release in favor of the tortfeasor, *Melendez v. Pennsylvania Assigned Claims Plan*, 384 Pa.Super. 48, 557 A.2d 767 (1989). Forfeiture of a claimant's rights is also warranted if the claimant fails to file a claim prior to the running of the statute of limitations, *Torres, supra*; contrary to Appellants' assertion, however, this rule is predicated on the claimant's knowing who the tortfeasors are. *Id.* As is evident, all of these cases are distinguishable from the case *sub judice*, where neither the Appellee nor the ACP identified the tortfeasor, and Appellee took no steps "in accordance with the tort liability law of this Commonwealth" without the knowledge or consent of the ACP. *See* 75 Pa.C.S. § 1756.

¶ 9 More recently this Court has found claimants entitled to recover benefits from the ACP, despite the fact that the

---

9. 75 Pa.C.S. § 1753.

10. 75 Pa.C.S. § 1754.

ACP might not be able to exercise its subrogation rights fully in relation to the claimants' tort actions. Both *Hagans, supra*, and *McGee, supra*, turned on this Court's determination that the complainant made a good faith effort to protect the ACP's subrogation rights. Appellant argues, however, that *Hagans* stands for the proposition that before an ACP claimant can recover benefits from the ACP, he has a duty to exercise good faith efforts to identify the tortfeasor and to obtain all vehicle information from the individual. We disagree.

¶ 10 In *Hagans*, the plaintiff was injured when an uninsured vehicle in which she was a passenger collided with an insured automobile. The uninsured car was driven by the husband of the car's owner, who was not in the car. Hagans had no insurance and filed a personal injury action against the driver of each vehicle, but did not name the host vehicle's owner as a defendant. She also made a claim for uninsured motorist and medical benefits against the ACP.[11] In that case, the trial court granted the ACP's motion for summary judgment. Hagans appealed to this Court arguing that to recover ACP benefits she was not required to sue the uninsured car's owner in the absence of evidence that the ACP's subrogation rights were harmed.[12] Appellees asserted that, although she was an eligible claimant, Hagans had an additional duty "to sue any and all potential tortfeasors involved in an accident prior to claiming benefits under an ACP", because otherwise their statutorily created "right of subrogation" would be destroyed. *Hagans, supra* at 1149.

¶ 11 After a thorough analysis, this Court stated that under

> [t]he clear language of the MVFRL, specifically section 1752–56, we find that there is no requirement that an eligible ACP claimant must sue any and all po-

tential tortfeasors, under the facts of the present case, in order to recover benefits under Subchapter E of the MVFRL. .... The statutory language does not impose this additional duty on Hagans. 75 Pa.C.S.A. 1752; *Westbrook, supra* [416 Pa.Super. 543, 611 A.2d 749 (1992)]. We hold, therefore, that because Hagans fulfilled all seven of the enumerated factors sufficient to grant her "eligible claimant" status, because she made a good faith effort to sue the drivers of the vehicles involved in her accident, because she did not wait to sue the drivers until the statute of limitations expired on her claim, and because she did not covertly work an arrangement where she would be paid by a tortfeasor so that she could work a double recovery from ACP benefits, she was not required to sue ... [the] owner of the vehicle....

*Hagans, supra* at 1156.

¶ 12 Thus, *Hagans* dealt specifically with whether a claimant must "sue any and all potential tortfeasors," and did not address whether a claimant has a duty to identify all potential tortfeasors, which is the issue presented here. Moreover, the *Hagans* Court did not impose a duty on the claimant to sue every potential tortfeasor, but rather to make a good faith effort to protect the ACP's subrogation rights. Thus, under *Hagans*, a good faith effort to protect subrogation rights is all that is required. Such a standard was met by Appellee in this case.

¶ 13 Reviewing the facts in the light most favorable to Appellee as verdict winner, it is clear that at the time of the accident Appellee reasonably expected the woman who caused his accident to accompany him to the hospital where he would obtain the necessary information. At trial, he testified that after hitting the pavement, he was dazed, afraid that he had broken his leg, and bleeding from his face,

---

11. In *Hagans,* the assignee insurance company was also Constitution State Service.

12. Hagans argued, and this Court agreed, that there was no evidence establishing that the owner was in any way responsible for Hagans' accident or injuries.

hand and ankle. N.T., 8/25/97, at 25–29. The woman took him into the house in front of where she was parked, opening the door with her keys, and gave Appellee some water and let him wash up in the bathroom. N.T., 8/25/97, at 34. He then testified as follows:

Q. [Appellee's counsel] And during that time when you were cleaning your blood did you have any conversations with her?

A. I just asked about going to the hospital.

THE COURT: Asked what?

THE WITNESS: Asked if she would take me to the hospital. I said my sister would take me if you take me over there, because my family lives with my sister anyway.

. . . .

Q. Did the person take you to your sister's?

A. Yes. She took me over to my mother's house.

Q. At that time did you have a plan with her about what was going to occur?

A. I asked her if she would follow my sister to the hospital.

. . . .

THE COURT: So the conversation was, you asked her to take you to the hospital—to your mother's house?

. . . .

THE WITNESS: She would follow me to the hospital or go to the hospital.

THE COURT: She said that or you said that?

THE WITNESS: I asked her if she would take me to my mothers [sic], my sister would take me to the hospital, and come with us.

THE COURT: Why did you want her to come with you?

. . . .

THE WITNESS: She could give the hospital the information.

. . . .

THE COURT: I don't understand. She took you to your mother's house, did she get out of the car?

THE WITNESS: No, she never got out of the car. She said she would meet us there.

THE COURT: Did she volunteer that?

THE WITNESS: Yes.

N.T., 8/25/97, at 34–37. Appellee reiterated that the woman told both him and his sister that she would meet them at the hospital, and he stated that he trusted her to do so. N.T., 8/25/97, at 37.

¶ 14 Immediately following the accident, Appellee was obviously upset and frightened by the experience and by the injuries he had sustained. The woman's behavior in helping Appellee reasonably suggested that she would come to the hospital as he asked and anticipated. Moreover, Appellee had never been involved in an accident such as this and was unaware of the information he needed. N.T., 8/25/97, at 41. In these circumstances, we find Appellee's request that the woman accompany him to the hospital and his expectation that she would then provide the requisite information both reasonable and sufficient to meet a good faith effort to protect Appellants' subrogation rights. Moreover, while at the hospital Appellee took the next appropriate step. He called the police and reported to them pertinent information about the accident, including the location of the residence the woman had entered and a vehicle description.

¶ 15 Appellants contend, however, that Appellee had a duty to do more. They claim that under 75 Pa.C.S. § 1702, he was obligated to make a full, accurate and complete report so that the police could make a meaningful investigation. However, the plain language of § 1702 makes no such requirement. Section 1702 states only that an "uninsured motor vehicle" is "[a]n unidentified motor vehicle that causes an accident resulting in injury *provided the accident is reported to the police . . . ."* 75 Pa.C.S. § 1702 – (3) (emphasis added). When the words of a statute are clear and

free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Jackson v. Financial Responsibility Assigned Claims Plan*, 394 Pa.Super. 274, 575 A.2d 626, 628 (1990). Furthermore, in accord with the MVFRL's goal of establishing a liberally compensatory scheme of uninsured and underinsured motorist protection, this Court has explicitly held that to meet the requirements of Section 1702, a claimant need only "report the accident to the police, and nothing more." *Hatcher v. Travelers Ins. Co.*, 421 Pa.Super. 225, 617 A.2d 808, 810 (1992), *appeal denied*, 536 Pa. 643, 639 A.2d 29 (1994). Once a claimant reports an accident to the police, his obligation under section 1702 is fulfilled.[13] The kind of information the claimant provides to police is unrelated to the statutory provision of the MVFRL which establishes the ACP's subrogation rights or to those which determine a claimant's eligibility for benefits. We turn then to Appellants' final contention that, even after Appellee reported the accident to the police, he had an additional duty to perform an investigation to determine the identification of the owner of the vehicle.

¶ 16 The record, in the instant case, shows that Appellee, who has minimal formal education,[14] fully expected that after he reported the accident to police, they would undertake an investigation to determine the identity of the driver. No fewer than six times during trial he reiterated that he thought that once he gave police the address of the house, it was their responsibility to investigate and identify the woman. He acknowledged that he had not gone back to Lauriston Street since the accident, but testified that his sister had gone back more than once to see if she could find the car, and had never seen it again. The trial court found Appellant credible and awarded him $5,000.00, noting

that section 1756, entitling the ACP to subrogation rights, is silent about what a plaintiff must do to preserve those rights. Judge Halbert, on review of the record and case law, denied Appellants' motion for j.n.o.v. We concur, and hold that Appellee's good faith effort to provide authorities with information about the driver at the time of the accident, his credible belief that police would investigate, and his sister's efforts to identify the driver thereafter, were a sufficient good faith effort to protect the subrogation rights of the Plan. Moreover, "[k]eeping in mind that one who comes to equity must do equity ...", *Daley–Sand*, *supra* at 970, we cannot disregard the evidence on the record that suggests that the ACP's own investigation of the driver's identity was also fruitless.

¶ 17 At trial, Appellee's counsel stated that Constitution State Service Company, assignee of the ACP, was notified of the accident and given a copy of the police report within two weeks of its occurrence. The ACP conducted an investigation issuing subpoenas to individuals from the house entered by Appellee and two neighboring homes. N.T., 8/25/97, at 8. Potential insured tortfeasors were identified at a neighboring house, but their insurer, State Farm, indicated that the pedestrian accident in which their insureds were involved occurred at a different time, date and location than the one in which Appellee was involved. N.T., 8/25/97, at 17. Defense counsel did not contest these facts and acknowledged that because the accident was not the same accident he had not subpoenaed these individuals for trial. N.T., 8/25/97, at 57.

¶ 18 The role of the ACP's assignee is to act as a claims adjuster, handling, processing and investigating uninsured motorist claims made to the Plan. *Hagans*, *supra* at 1147. In this instance, the ACP

---

13. The police report, admitted into evidence, includes a street address and an indication that the driver was a middle-aged white female.

14. Appellant completed tenth grade.

did investigate. Their investigation, presumably undertaken in good faith, was unsuccessful and yielded no better results than the efforts of Appellee's sister. In those circumstances, it is clear that Appellee cannot be required to accomplish what the resources and skills of a specialized company could not.

¶ 19 Given these facts, Appellee cannot be found to have prejudiced Appellants' subrogation rights. Indeed, the subrogor/subrogee relationship between Appellee and Appellants remained inchoate because neither party could identify a tortfeasor from whom Appellee could recover. In the absence of an identified tortfeasor, Appellee had no cognizable cause of action under this Commonwealth's tort laws against a third party and Appellants could not recover damages. *Hagans, supra.* We reiterate that the goal of subrogation is "to place the burden of the debt upon the person who should bear it." *Daley–Sand, supra.* Appellee should not bear the cost of this accident for he is precisely the kind of individual for whom the ACP was expected to provide limited benefits: he was the innocent victim of a motor vehicle-related accident; he was legitimately uninsured; and, he will not effect a double recovery because the tortfeasor has never been identified.

CONCLUSION:

¶ 20 Accordingly, the judgment entered in the Court of Common Pleas of Philadelphia County on January 15, 1999 is affirmed.