621 A.2d 1005

**Frank IAFRATE, Appellant,**

**v.**

**Pat HADESTY and Morning Call, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1992.

Filed Jan. 29, 1993.

Reargument Denied April 8, 1993.

Richard J. Orloski, Allentown, for appellant.

Malcolm J. Gross, Allentown, for appellee.

Before WIEAND, FORD ELLIOTT and HOFFMAN, JJ.

WIEAND, Judge:

In this action to recover damages for defamation, the trial court held that the plaintiff, Frank Iafrate, was a public figure and entered summary judgment in favor of Morning Call, Inc., the defendant newspaper, because plaintiff could not show that the newspaper had acted with malice. On appeal, the sole issue is whether the trial court properly determined that plaintiff was a public figure.

The defamation action is based on an article appearing in the Morning Call on June 19, 1990. The article discussed plans for a party to be held July 4th on a rural tract of land owned by Iafrate near Slatington, in Lehigh County. The party was intended to be for between 150 and 200 guests, was

to be catered, and featured three bands. Quoted in the news article was another defendant, Pat Hadesty, a neighbor, who expressed her concerns about the party. The article was, in pertinent part, as follows:

"We're talking traffic, garbage, drugs, who knows," said a worried Pat Hadesty, whose property abuts Iafrate's. "They're calling it a private party, but its going to be a noise nuisance."

These statements, Iafrate contends, were false and defamatory.

Iafrate is employed as a pilot by United Airlines. He resides in Slatington and is currently in the process of developing Valley View Estates, a 24 lot development of land in rural Lehigh County. His son, Frank, serves as the caretaker for the development and lives in a farmhouse on one of the lots. The son is a musician and uses the barn across the street from the farmhouse several times a week for rehearsals by his band. The band was planning to participate in the July 4th party. Iafrate intended to invite his neighbors to attend the party, but all guests were expected to buy individual tickets at a price of ten ($10.00) dollars to help defray the cost of the party. When Hadesty learned of the party, she called the Morning Call to express her concerns and to state her intent to seek township intervention. Apparently she exaggerated the number of guests anticipated, as well as the number of bands participating.

After the article had appeared in the Morning Call, Iafrate began to receive telephone calls from township officials. As a consequence thereof, he canceled the party. Thereafter, the Morning Call published additional stories, none of which are alleged to be defamatory. Iafrate has stipulated that he is unable to prove that the Morning Call acted with malice.

A summary judgment can properly be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Dibble v. Security of America Life Insurance Co.*, 404 Pa.Super. 205, 207, 590 A.2d 352, 353 (1991). To establish a cause of action for defamation, the plaintiff must establish: "(1) the

defamatory character of the communication; (2) its publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege." *Smith v. Wagner*, 403 Pa.Super. 316, 321, 588 A.2d 1308, 1311 (1991). See: 42 Pa.C.S. § 8343(a). See also: *Marcone v. Penthouse Int'l Magazine*, 754 F.2d 1072, 1077–1078 (3d Cir.1985), *cert. denied*, 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985).

In *New York Times v. Sullivan*, 376 U.S. 254, 279–280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964) and *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, 1111 (1967), the Supreme Court mandated that public officials and public figures must prove "actual malice" in order to recover damages in a defamation action against the media, that is, "that the defamatory statements were made with knowledge of their falsity or with reckless disregard of the truth." *Avins v. White*, 627 F.2d 637, 646 (3d Cir.1980), *cert. denied*, 449 U.S. 982, 101 S.Ct. 398, 66 L.Ed.2d 244 (1980). Subsequently, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983), the Court identified two classes of public figures:

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Id.* 418 U.S. at 351, 94 S.Ct. at 3013, 41 L.Ed.2d at 812.

A person may become a limited purpose public figure if he "thrust[s] himself into the vortex of the discussion of pressing public concerns." *Rosenblatt v. Baer*, 383 U.S. 75, 86 n. 12, 86 S.Ct. 669, 676 n. 12, 15 L.Ed.2d 597, 606 n. 12 (1966). Such a person uses "purposeful activity" to thrust "his personality"

into a "public controversy." *Curtis Publishing Co. v. Butts, supra,* 388 U.S. at 155, 87 S.Ct. at 1991, 18 L.Ed.2d at 1111 (1967). He becomes a limited purpose public figure because he invites and merits "attention and comment." *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 346, 94 S.Ct. at 3009, 41 L.Ed.2d at 808 (1974). A person may become a limited purpose public figure if he attempts to have, or realistically can be expected to have, a major impact on the resolution of a specific public dispute that has foreseeable and substantial ramifications for persons beyond its immediate participants. *Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1292 (D.C.Cir.1980), *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980). "A private individual," however, "is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Reader's Digest Assoc.,* 443 U.S. 157, 167, 99 S.Ct. 2701, 2707, 61 L.Ed.2d 450, 460 (1979).

■ It is the function of the court to ascertain in the first instance whether the plaintiff is a public or private figure. *Smith v. A Pocono Country Place Property Owners Assoc., Inc.,* 686 F.Supp. 1053, 1056 (M.D.Pa.1987). "The classification of a plaintiff as a public or private figure is a question of law to be determined initially by the trial court and then carefully scrutinized by an appellate court." *Id.,* quoting *Marcone v. Penthouse Int'l Magazine, supra* at 1081 n. 4. See also: *Wolston v. Reader's Digest Assoc.,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979).

We agree with the trial court that Frank Iafrate was not a public figure for all purposes. After careful study, we conclude also that he was not a public figure for any limited purpose relevant to this action.

■ Mere newsworthiness alone does not create a public controversy. *Marcone v. Penthouse Int'l Magazine for Men, supra,* 754 F.2d at 1083.

A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an

appreciable way. The Supreme Court has made clear that essentially private concerns or disagreements do not become public controversies simply because they attract attention.

To determine whether a controversy indeed existed ... the judge must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.... If the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy. (citations omitted)

*Waldbaum v. Fairchild Publications, Inc.*, *supra* 627 F.2d at 1296–1297.

■ Appellant did not inject himself into an issue of public interest, concern or controversy. He did no more than make plans for a private party. The fact that these plans may have formed the basis for a neighbor's ire or that the neighbor elected to call the newspaper and complain did not render appellant a public figure. As the court observed in *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 591 (1st Cir.1980), "*Gertz's* requirement that in order for [private] individuals ... to merit public figure status, they must 'have thrust themselves to the forefront of particular public controversies' [seems] to imply a pre-existing controversy." Moreover, "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411, 431 (1979).

Here, there was no public controversy whatsoever until after Hadesty had called the Morning Call and the newspaper published an article repeating her fears and concerns. The fact that Hadesty had not received an invitation to the party and may have learned of it by rumor or hearsay does not alone suggest a public issue or concern. Similarly, that neighbors had previously objected to the noise resulting from band practice in the barn, if such was the case, did not render

appellant a public figure. Indeed, prior band rehearsals by appellant's son were irrelevant to appellant's status as a public figure with respect to the party which he planned as a Fourth of July celebration.

The record is also clear that there was no public debate prior to the appearance of the newspaper's story. Appellant had not been contacted by public officials about the party and had received no public complaints about the planned party until *after* Hadesty complained and the Morning Call published her complaints. Clearly, if there was any dispute in this case, the dispute was private and not public. It did not have any consequences beyond those persons in the immediate neighborhood where Iafrate lived.

Similarly, Iafrate did not become a public figure because the Morning Call published statements, made in response to questions asked by the Call's reporter, by which Iafrate defended himself against his neighbor's complaints. The newspaper could not, by its handling of the story, create a public issue where there existed, in fact, only a private dispute between neighbors. By speaking with the Call's reporter, Iafrate did not thrust himself into a public controversy or make himself a public figure. Any other result would make public figures of all persons requested by the media to answer inquiries or make statements on matters deemed newsworthy by the media. This is not the law. See: *Waldbaum v. Fairchild Publications, supra* at 1298 n. 31 ("responding to press inquiries or attempting to reply to comments on oneself through the media does not necessarily mean that a person is attempting to play a significant role in resolving a controversy.").

In *Avins v. White, supra*, the Court of Appeals for the Third Circuit offered as reason for the policy granting public figures less protection against false statements than private persons the fact that public figures have voluntarily chosen to involve themselves in public controversy and have thereby assumed the risk of increased injury from defamatory remarks. They are also more resilient to public criticism and generally have greater access to channels of effective communication which can counteract false assertions by the media.

Here, appellant was not a public figure. He did not have available other channels of defending himself against published accusations. He did not become a public figure merely because during an interview requested by a Call reporter he rebutted the accusations which had been made by his neighbor. Appellant did not thereby thrust himself into a public debate or choose to involve himself in public controversy. He was not made a public figure merely because he was the subject of a neighbor's private complaint or because he agreed to be interviewed by and was quoted by a reporter for the Morning Call in response thereto.

Finally, appellant was not a public figure merely because he was attempting, at or about the same time, to develop and sell lots from the land which he owned. Any other rule would make public figures of all who engaged in business and commerce.

We do not decide that appellant was defamed or that he should be entitled to recover in this action. We hold only that he was not a public figure. The trial court erred, therefore, when it entered summary judgment in favor of the newspaper merely because appellant conceded that he could not prove malice.

Reversed and remanded for further proceedings. Jurisdiction is not retained.