**Hemispherx Biopharma Inc. v. Asensio**

*Margaret Mandakis,* for plaintiff.
*Lawrence McMichael* and *David C. Franceski Jr.,* for defendants.

SHEPPARD JR., *J.,* September 6, 2001—Presently before this court is defendants' motion for summary judgment, seeking to dismiss the action in its entirety. Defendants make several arguments in support of their motion. Certain arguments involve strict issues of law, while others involve issues of fact. This opinion is limited to a discussion of the issues of law, because it is evident to the court that genuine issues of material fact exist which preclude granting summary judgment. Further, resolution of the legal issues also demonstrates that summary judgment is not appropriate.

## BACKGROUND[1]

This action arises from defendants' alleged scheme to illegally manipulate the price of, and short-sell, plaintiff's

---

1. The facts presented here are intended as background in reviewing the nature of this action and the present motion. For more detail on

common stock through defendants' publication of allegedly defamatory statements in a series of research reports and/or press releases regarding plaintiff and plaintiff's development of a certain anti-viral drug.

Plaintiff, Hemispherx Biopharma Inc. is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. HBI is engaged in the business of researching, developing and testing experimental pharmaceutical compounds and drug technologies for regulatory approval and sale. Its primary focus has been the development and clinical testing of the anti-viral compound known as Ampligen for the possible treatment of viral afflictions such as chronic fatigue syndrome and chronic hepatitis. HBI's common stock is currently traded on the American Stock Exchange.

Defendant, Asensio & Company Inc. is a Delaware corporation with its principal place of business in New York, New York. It is a registered broker and investment banking firm that publishes and distributes to the investing public analytical research reports regarding publicly-traded companies and trades securities of those companies for its own account. Defendant, Asensio.Com Inc. purportedly owns 100 percent of the shares of ACI, maintains ACI's accounts and provides the necessary capital for ACI to conduct its business, including proprietary trading and the short-selling alleged in this action. Manuel P. Asensio, a citizen of New York, is the founder and chairman of ACI.

---

the facts and procedural history of this case, please see this court's previous opinion, *Hemispherx Biopharma Inc. v. Asensio,* July 2000, no. 3970 (C.P. Phila. February 14, 2001) (Sheppard, J.).

In August 1998, defendants purportedly began to accumulate short positions in HBI in order to realize a profit which would occur from the erosion in the price of HBI's common stock after the publication of the allegedly defamatory statements. On September 22, 1998, defendants produced and published, through means of interstate commerce including the Internet, a "research report" and accompanying press release, containing numerous statements about HBI and Ampligen. See pl. exhibit 33.[2] This research report was accompanied by a "strong sell recommendation" with respect to HBI's shares of common stock. *Id.* It was preceded by defendants' statements which appeared in an article in the September 28, 1998 issue of *Business Week* which had been distributed on the Internet on September 17, 1998. See pl. exhibit 32. The report and accompanying press release included the following initial statements:

- Ampligen is "toxic;"

- Ampligen has "no medical or economic value;"

- Ampligen "is medically useless and an obsolete drug;"

- Ampligen is "off patent;"

- HBI has made "fraudulent misrepresentations about Ampligen's FDA filing status and CFS earnings claims;"

---

2. The term—"exhibits" means those exhibits attached to the parties' respective memoranda of law pertinent to the present motion. Plaintiff's exhibits are designated by number as exhibit P-1, P-2, P-3, etc. Defendants' exhibits are designated by letter as exhibit D-A, D-B, D-C, etc.

• HBI's phase II clinical trial of Ampligen for use as a possible treatment for CFS was "neither placebo-controlled nor double blind" and "failed;"

• There is "no legitimate medical or business purpose for [HBI's] continuing attempts to test Ampligen for treatment of CFS and other diseases;"

• HBI "is not and has never been engaged in any long-term project to create a new drug;"

• HBI has "purposefully cultivated" false claims regarding Ampligen "in order to defraud investors;"

• HBI "is promoting futile projects simply in order to enable insiders to sell their otherwise worthless stock to the public." See pl. exhibit 33.

Defendants also published additional statements on ACI's website and to third parties such as the FDA, the American Stock Exchange, the Securities Exchange Commission and *Business Week* magazine which are allegedly defamatory. Some of defendants' statements also appeared in the September 23, 1998 issue of the *Philadelphia Inquirer*. See pl. exhibit 34. The publication of these statements allegedly caused the price of HBI's common stock to decline precipitously, reduce the value of the company, and impaired HBI's business relations with third parties.

This action originated in the federal court system over two years ago. It was transferred to this court on July 31, 2000, pursuant to 42 Pa.C.S. §5103. Plaintiff asserts four counts against defendants: (1) defamation; (2) disparagement; (3) intentional interference with existing and prospective business relations; and (4) civil conspiracy. Defendants move for summary judgment, asserting, in-

ter alia, that (1) the challenged statements are not actionable since they are mere opinions based on disclosed facts; (2) the statements are substantially true; (3) HBI is a public figure and cannot prove that the statements were made with actual malice; (4) HBI's damages are not recoverable for a loss in market capitalization; (5) HBI cannot show a causal connection between the statements and the losses it allegedly suffered; (6) HBI cannot make out a claim for tortious interference based on difficulty to work with third parties on account of defendants' statements; and (7) HBI fails to meet the plurality requirement to make out a claim for civil conspiracy where HBI does not identify the "John Doe" defendants which it alleges conspired with the named defendants to defame HBI.

For the reasons set forth, this court finds that defendants are not entitled to summary judgment as a matter of law.

## DISCUSSION

Rule 1035.2 of the Pennsylvania Rules of Civil Procedure provides that a moving party is entitled to summary judgment if (1) there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery or expert report, or (2) after the completion of discovery, a party bearing the burden of proof on an issue has failed to produce evidence of facts essential to the cause of action or defense such that a jury could return a verdict in his favor. The moving party has the burden to prove that there is no genuine issue of material fact. *Hagans v. Constitution State Service Co.,* 455 Pa.

Super. 231, 254, 687 A.2d 1145,1156 (1997). Once the moving party meets this burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* The trial court's function is to determine whether there are controverted issues of fact, not whether there is sufficient evidence to prove the particular facts. *Id.* at 254, 687 A.2d at 1157. A motion for summary judgment must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992). Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered. *Skipworth v. Lead Industries Ass'n Inc.,* 547 Pa. 224, 230, 690 A.2d 169, 171 (1997).

## I. *Pennsylvania Law Applies Because Pennsylvania Has the Greatest Interest in Protecting Plaintiff's Reputation Since Plaintiff Is Domiciled in Pennsylvania*

The threshold issue to decide is whether there is a choice of law issue, and if so, which law should the court apply. In any case, however, Pennsylvania conflict of law rules require that a Pennsylvania court apply Pennsylvania's evidentiary sufficiency standard to a claim regardless of which state's substantive law applies to the claim. See *e.g., Foley v. Pittsburgh-Des Moines Co.,* 363 Pa. 1, 10, 68 A.2d 517, 521 (1949) ("The law of the forum also controls all questions as to burden of proof

and whether there is sufficient evidence of negligence and proximate causation to entitle the plaintiff to have the case submitted to the jury."); *Sudol v. Gorga,* 346 Pa. 463, 465-66, 31 A.2d 119, 120 (1943) ("The law of the forum determines whether there is sufficient evidence on an issue of fact to warrant its submission to a jury."); *Crawford v. Manhattan Life Insurance Company of N.Y.,* 208 Pa. Super. 150, 161 n.2, 221 A.2d 877, 884 n.2 (1966) ("The questions of presumption and burden of proof in this regard are, of course, procedural and to be determined by the law of the forum."); Restatement (Second) of Conflict of Laws §135 ("The local law of the forum determines whether a party has introduced sufficient evidence to warrant a finding in his favor on an issue of fact . . . .").

Therefore, the Pennsylvania standard for summary judgment applies to the motion. *Smith v. Commonwealth Nat'l Bank,* 384 Pa. Super. 65, 557 A.2d 775 (1989) (applying Pennsylvania standard for summary judgment where New York substantive law governed the plaintiff's claims).

Here, defendants assert that there may be a choice of law issue since they are headquartered and work in New York, which is the situs of the publication of the allegedly defamatory statements, while plaintiff's principal place of business is in Pennsylvania. Defs. mem. of law at 19 n.17. Defendants concede that no choice is necessary because summary judgment should be granted under either New York law or Pennsylvania law, but they also assert that New York law is "decidedly more protective" of statements of opinion than the U.S. Constitution. *Id.* Plaintiff, in turn, argues that Pennsylvania law

must be applied since New York law is decidedly more favorable to defendants in defamation cases and since Pennsylvania's flexible choice of law rules dictate that Pennsylvania has the priority of interest in addressing the issues. Pl. mem. of law at 23-26.

The first step in a choice of law analysis is to determine if the laws of the competing states actually differ. *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 702 (Pa. Super. 2000). If there is no difference, no further analysis is required. *Id.* If a conflict exists, the court must weigh "the governmental interests underlying the issue and determine which state has the greater interest in the application of its law." *Id.* See also, *Griffith v. United Airlines Inc.,* 416 Pa. 1, 21, 203 A.2d 796, 805 (1964) (rejecting the strict lex loci delicti rule in favor of a more flexible approach which permits analysis of the policies and interests underlying the particular issue and determining which state has the most significant relationship to the issue).

The central issue in this case is whether plaintiff was defamed by defendants' publication of its research report on September 22, 1998 and the subsequent publications of various statements deriving from that report.[3] A quick examination of New York and Pennsylvania cases shows that both states deem mere expressions of opinion as non-actionable to support a claim for defamation, but both states allow such claims to proceed if the statement of opinion implies undisclosed facts which are capable of a defamatory meaning. See *Constantino v. Uni-*

3. Plaintiff's other claims for disparagement, tortious interference with existing and/or prospective business relations and civil conspiracy all depend on the viability of the defamation claim.

*versity of Pittsburgh,* 766 A.2d 1265, 1270 (Pa. Super. 2001); *Green v. Mizner,* 692 A.2d 169, 172 (Pa. Super. 1997); *Gross v. New York Times Co.,* 603 N.Y.S.2d 813, 82 N.Y.2d 146, 151-52 (1993). Both Pennsylvania and New York State courts apply the Restatement (Second) of Torts §566, in determining whether a statement is a non-actionable "pure" opinion or whether a statement is a "mixed" opinion capable of being understood by the reader or listener to be defamatory. *Green,* 692 A.2d at 174; *Gross,* 82 N.Y.2d at 153-54.

Further, both New York and Pennsylvania courts hold that a communication may be defamatory if it imputes to another conduct, character or condition that would adversely affect his fitness for the proper conduct of his business, trade or profession. *Constantino,* 766 A.2d at 1270; *Clemente v. Impastato,* 711 N.Y.S.2d 71, 73, 274 A.D.2d 771, 773 (2000). Under Pennsylvania law, "[d]efamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her." *Constantino,* 766 A.2d at 1270. Similarly, New York courts have found defamatory meaning in "words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society." *Fairly v. Peekskill Star Corp.,* 445 N.Y.S.2d 156, 83 A.D.2d 294, 296 (1986) (quoted in *Weinstein v. Friedman,* 1996 WL 137313, at *10 (S.D.N.Y. March 26, 1996)).

Moreover, the United States Supreme Court has set forth that a public figure plaintiff, bringing a defamation suit, must show that the statement was made with "actual malice," *i.e.,* with knowledge that it was false or with reckless disregard as to whether it was false or not. *Gertz v. Robert Welch Inc.,* 418 U.S. 323, 327-28, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (adopting standard set forth in *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)). As to defamation suits brought by private figure plaintiffs, irrespective of whether the statements involved matters of purely private or public concern, the court allows the states to define for themselves the appropriate standard of liability as long as they do not impose liability without fault. *Id.* at 347. No choice of law issue would therefore exist if HBI was deemed a public figure plaintiff since both Pennsylvania and New York courts apply the "actual malice" standard as mandated by the U.S. Supreme Court. See *DiSalle v. P.G. Publishing Co.,* 375 Pa. Super. 510, 548, 544 A.2d 1345, 1364 (1988); *Sweeney v. Prisoners' Legal Servs. of New York Inc.,* 538 N.Y.S.2d 370, 373, 146 A.D.2d 1, 5 (1989).

Rather, a choice of law issue would arise if this court concludes that plaintiff is a private figure plaintiff. In Pennsylvania, a private figure plaintiff, seeking to recover for harm inflicted as a result of the publication of defamatory statements, must prove that the defamatory matter was published with "want of reasonable care and diligence to ascertain the truth" or with negligence. *Rutt v. Bethlehems' Globe Publishing Co.,* 335 Pa. Super. 163, 186, 484 A.2d 72, 83 (1984). In contrast, New York law holds that a private figure plaintiff bringing a defamation suit for statements of public concern must prove that

the publisher acted in a grossly irresponsible manner. *Chapadeau v. Utica Observer-Dispatch,* 38 N.Y.2d 196, 199, 379 N.Y.S.2d 61, 64 (1975). See also, *Jewell v. NYP Holdings Inc.,* 23 F. Supp.2d 348, 391-92 (S.D.N.Y. 1998) (adopting "incremental harm" defense to defamation and observing that New York law "broadly recognize[s] a series of different privileges in defamation cases, some qualified, others absolute."). As discussed below, this court finds that HBI is a private figure plaintiff. Therefore, a conflict does exist as to plaintiff's burden of proof.

This court finds that Pennsylvania law applies to plaintiff's substantive law claims since Pennsylvania has the greatest interest in protecting HBI's reputation. The purpose of a defamation suit is to compensate an individual for harm to one's reputation inflicted by the defamatory statement. *Pro Golf Manufacturing Inc. v. Tribune Review Newspaper Co.,* 761 A.2d 553, 556 (Pa. Super. 2000).[4] See also, *Wilson v. Slatalla,* 970 F. Supp. 405, 414 (E.D. Pa. 1997); *Fitzpatrick v. Milky Way Productions Inc.,* 537 F. Supp. 165, 171 (E.D. Pa. 1982). Since the state of a plaintiff's domicile is generally the place where most of his reputational contacts are found, the state with the greatest interest in vindicating the plaintiff's good name and providing compensation for harm caused by the alleged defamation is that state. *Wilson,* 970 F. Supp. at 414. Additionally, section 150 of the Restatement (Second) of Conflicts of Laws, relating to multi-state defamation, states, in pertinent part, that: "[w]hen a corporation, or other legal person, claims that

---

4. In contrast, the tort of commercial disparagement is to protect one's economic interest against pecuniary loss. *Pro Golf Manufacturing,* 761 A.2d at 556.

it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time, if the matter complained of was published in that state." Restatement (Second) of Conflicts of Laws §150(3). But see, Restatement (Second) of Conflicts of Laws §149 (relating the general rule that in defamation action, "the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in section 150 . . ."). See also, *La Luna Enterprises Inc. v. CBS Corp.*, 74 F. Supp.2d 384, 385 (S.D.N.Y. 1999) (under New York's choice of law rules, the state of the plaintiff's domicile in a defamation case usually has the most significant relationship to the case provided that the publication was in the plaintiff's state).

Here, HBI is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. Defendants, on the other hand, are New York residents. The alleged defamatory publications originated in the September 22, 1998 research report that appeared on defendants' website. The alleged defamatory statements also appeared in *Business Week* magazine and the *Philadelphia Inquirer*. Since the alleged defamatory statements appeared in more than one state, including Pennsylvania, the state with the most significant relationship appears to be Pennsylvania, the state of HBI's domicile. Restatement (Second) of Conflicts of Laws §150(3). Accordingly, this court will apply Pennsylvania law to plaintiff's substantive claims.

## II. *HBI Is Not a General Public Figure Nor a Limited Purpose Public Figure Nor Is the Subject of the Alleged Defamatory Statements Necessarily a Matter of Public Controversy*

Pennsylvania law holds that the initial question whether a plaintiff is a public or private figure is an issue of law to be determined by the trial court. *Brown v. Philadelphia Tribune Co.,* 447 Pa. Super. 52, 59, 668 A.2d 159, 163 (1995); *Iafrate v. Hadesty,* 423 Pa. Super. 619, 623, 621 A.2d 1005, 1007 (1993); *Wagstaff v. The Morning Call Inc.,* 41 D.&C.4th 431, 439-40 (Lehigh Cty. 1999). In *Gertz,* the Supreme Court identified two classes of public figures:

"In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions." 418 U.S. at 351. Accord *Wolston v. Reader's Digest Assoc.,* 443 U.S. 157, 165, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979).

Whether a person is a limited purpose public figure depends upon the nature of the controversy and the extent of plaintiff's involvement with it. *Rutt v. Bethlehems' Globe Publishing Co.,* 335 Pa. Super. 163, 181, 484 A.2d 72, 81 (1984) (quoting *Gertz,* 418 U.S. at 352). A person may be considered a limited purpose public figure "if he is attempting to have, or realistically can be expected to have, a major impact on the resolution of a specific pub-

lic dispute that has foreseeable and substantial ramifications for persons beyond its immediate participants." *Id.* at 180-81, 484 A.2d at 80 (quoting *Waldbaum v. Fairchild Publications Inc.,* 201 U.S.App.D.C. 301, *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128, 627 F.2d 1287, 1292 (1980)). A person becomes a limited purpose public figure because he invites and merits "attention and comment." *Iafrate,* 423 Pa. Super. at 623, 621 A.2d at 1007 (quoting *Gertz,* 418 U.S. at 346). However, a private individual "is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Rutt, supra* at 181, 484 A.2d at 81 (quoting *Wolston,* 443 U.S. at 167, 99 S.Ct. at 2707, 61 L.Ed.2d at 450).

Additionally, a public controversy must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way. *Iafrate,* 423 Pa. Super. at 623-24, 621 A.2d at 1007. "[P]rivate concerns or disagreements do not become public controversies simply because they attract attention." *Id.* at 624, 621 A.2d at 1007. To determine whether such a controversy exists, the court must examine whether persons were actually discussing some specific question and if the press was covering the debate and reporting what people were saying; if the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants. *Id.* at 624, 621 A.2d at 1008. However, "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Brown,* 447 Pa. Super. at 59, 668 A.2d at 162 (quoting *Hutchinson v. Proxmire,* 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411, 431 (1979)).

·It is true that corporations may be public figures for purposes of defamation actions. See *Steaks Unlimited Inc. v. Deaner,* 623 F.2d 264, 273 (3d Cir. 1980); *Computer Aid Inc. v. Hewlett-Packard Co.,* 56 F. Supp.2d 526, 535 (E.D. Pa. 1999); *Reliance Ins. Co. v. Barron's,* 442 F. Supp. 1341, 1347-48 (S.D.N.Y. 1977). This is so because a corporation has greater access to channels of communication which allow it to make an effective response in the public forum to counteract allegedly defamatory statements. *Steaks,* 623 F.2d at 273; *Computer Aid,* 56 F. Supp.2d at 536. However, this is merely one of the considerations in determining whether a particular plaintiff is a public figure, and absent other factors, a corporation should not be deemed a public figure. *Computer Aid,* 56 F. Supp.2d at 536. Rather, a more important factor is whether, a plaintiff, by injecting itself into the public arena and engaging the public's attention, has effectively assumed the risk of potentially unfair criticism. *Steaks,* 623 F.2d at 273.

In *Steaks,* the Court of Appeals for the Third Circuit deemed that Steaks is not a public figure in the general sense because there was no evidence of its fame or notoriety or that it is widely involved in public affairs. *Id.* However, the court did find that it was a limited purpose public figure for purposes of the controversy at issue on account of its intensive advertising campaign in the Pittsburgh area regarding its product, which included broadcasts over local radio stations, ads in local newspapers, large signs displayed at sales locations and handbills given to person's walking near Steaks Unlimited sales locations. *Id.*

In contrast, in *Computer Aid,* the underlying transaction involved an agreement to develop a product and a

subsequent merger by which Hewlett-Packard became the legal successor in interest of one of the parties to the agreement. 56 F. Supp. at 530. Hewlett-Packard's counterclaim, alleging defamation, arose from a press release regarding the plaintiff's claims and the underlying agreement to develop a product. *Id.* at 531. The district court did not find that Hewlett-Packard was a general purpose figure, despite the fact that it is one of the largest and most influential corporations in the world or that its stocks are one of the most actively traded on the New York Stock Exchange. *Id.* at 535. The court also found that Hewlett-Packard was not a limited purpose public plaintiff with respect to the subject matter of the publicity, despite its several press releases regarding the transaction at issue and its circulation of informational material to its staff and customers. *Id.* at 537. But see, *Reliance,* 442 F. Supp. at 1348 (holding that Reliance is a general purpose public figure where Reliance is a large corporation whose shares are traded on the New York Stock Exchange, its business is in a field subject to state regulation, it files periodic reports with the SEC and it is offering to sell its stock to the public which was the subject of the libel action against the financial magazine).

Here, defendants contend that HBI is a public figure because it thrust itself into two public controversies: (1) the effectiveness of its drug Ampligen in the treatment of high-profile diseases and (2) the value of its publicly-traded common stock. In support of their position, defendants argue that HBI's stock is traded on the AMEX, HBI promotes Ampligen in press releases, HBI has released the results of clinical trials regarding Ampligen that have resulted in over 200 peer-review pub-

lications and articles, and HBI has solicited research grants from the federal government. Plaintiff, in response, argues that it cannot be deemed a public figure simply because it received research grants for Ampligen. See *Hutchinson v. Proxmire,* 443 U.S. 111, 135, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (reversing an award of summary judgment against researcher who received government grants but could be deemed a public figure merely by such receipt). Plaintiff also contends that the effectiveness of Ampligen has not been the subject of public debate since it has been under clinical study by HBI for over 10 years, has been subject to FDA regulations, and with the exception of private litigation, has remained uncontroversial except within the medical or scientific community.

In light of the decision in *Computer Aid,* which involved a more renown corporation, this court finds that HBI should not be deemed a general purpose or limited purpose public figure for purposes of this controversy. Further, it is not evident that a public controversy exists regarding the value of HBI's stock or the effectiveness of its drug, Ampligen. Rather, it may well be that defendants created this "controversy" by publishing its negative reports regarding HBI and its product, and such conduct may not constitute a defense. See *Brown,* 447 Pa. Super. at 59, 668 A.2d at 162. Therefore, this court finds that HBI should be considered a private plaintiff and HBI need only prove that the alleged defamatory statements were negligently published.[5]

---

5. Defendants, in their reply brief, raised the issue that the statements are conditionally privileged since the safety and efficacy of a new experimental drug are of important interest to the public.

### III. *The Statements at Issue Constitute Either Assertions of Fact or Opinions That Imply the Existence of Undisclosed Facts Capable of a Defamatory Meaning*

Pennsylvania courts hold that the trial court must determine, as a matter of law, whether a statement is one of fact or opinion, as well as determining whether the challenged statement is capable of having defamatory mean-

---

Our Superior Court describes the conditional privilege where it states that:

"Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged.

"An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know." *Davis v. Resources for Human Development Inc.,* 770 A.2d 353, 358 (Pa. Super. 2001). (citations and internal quotations omitted)

Once a communication's subject matter is deemed conditionally privileged, the plaintiff must establish that the privilege was abused by the defendant. *Id.* at 359. To prove that defendant abused the privilege, the plaintiff must show that "the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose." *Id.*

Even assuming arguendo that a conditional privilege attached to defendants' statements, since the effectiveness of a drug in treating certain diseases is in the public interest and potential investors need to know the value of the company in which they are buying stock, plaintiff may show abuse of the privilege through either malice or negligence. These are issues of fact, relating to defendants' intent in publishing the statements and as to whether such abuse actually occurred, which precludes this court from granting summary judgment.

ing. *Constantino,* 766 A.2d at 1269; *Green,* 692 A.2d at 174; *Brown v. Philadelphia Tribune,* 447 Pa. Super. at 60, 668 A.2d at 163. Communicated opinions are actionable when they can be reasonably understood to imply the existence of undisclosed defamatory facts. *Green,* 692 A.2d at 174. Further, in cases where a plausible innocent interpretation of the communication co-exists with an alternative defamatory interpretation, the issue must proceed to a jury. *Id.*

First, in deciding whether a statement is an actionable opinion, the court may rely on section 566 of the Restatement (Second) of Torts which states that:

"A defamatory communication may consist of a statement in the form of an opinion but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Quoted in *Green,* 692 A.2d at 174.

Comment (c) of section 566 clarifies the distinction where it states, in pertinent part, that:

"A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that

the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability." Restatement (Second) of Conflicts of Laws §566, cmt (c).

The court should consider the effect the statement would fairly produce or naturally engender in the minds of those average persons among whom it is intended to circulate. *Constantino,* 766 A.2d at 1270.

Here, the 16 statements at issue, taken from the *Business Week* article of September 17, 1998, the September 22, 1998 three-part report and many post-report press releases are arguably either assertions of fact or opinions which can be reasonably construed as implying undisclosed facts which may have a derogatory meaning. Contrary to defendants' position, it is not clear that the statements are merely opinions simply because of the inclusion of the preceding language that "we believe . . . ," or the fact that defendants are recommending the short sale. Genuine issues of fact exist regarding whether the statements were interpreted as defamatory by the readers of the statements and whether or not the statements were substantially true. Additionally, issues of fact exist regarding whether plaintiff's damages are calculable and whether they are directly attributable to defendants' statements.

Therefore, this court cannot grant summary judgment in favor of defendants on plaintiff's defamation claim. Similarly, issues of fact preclude this court from granting summary judgment on plaintiff's claims for commercial disparagement, tortious interference with existing and/or prospective business relations and civil conspiracy.

## CONCLUSION

For the reasons set forth, this court denies defendants' motion for summary judgment. A contemporaneous order consistent with this opinion will be issued.

## ORDER

And now, September 6, 2001, upon consideration of defendants' motion for summary judgment, plaintiff's response in opposition, the parties' respective memoranda, all other matters of record, and in accord with the opinion being filed contemporaneously with this order, it is ordered that defendants' motion for summary judgment is denied.